(75 South. 78)

No. 20759.

STATE ex rel. SCOTT v. CADDO ROCK DRILL BIT CO.

(April 16, 1917.)

*(Syllabus by the Court.)*

CORPORATIONS ⬅113—STOCK—PROVISION OF CERTIFICATE—RECORD OF TRANSFER — MANDAMUS.

Assuming that the following clause written in the charter of a corporation and printed on each stock certificate, "No stock of this corporation shall be sold by any holder thereof in open market except after ten days' prior notice of intention to sell has been given the company, during which time the other stockholders shall have the privilege of purchasing the same," is a valid restriction on the negotiability of the instrument, and is binding upon a bona fide purchaser, its only effect is to preserve to the other stockholders the privilege of purchasing the stock at any time during a period of ten days. Therefore, when the purchaser of such a stock certificate, indorsed by the person in whose name it was issued, delivers it to the secretary of the corporation, with a written request that it be transferred on the books of the company and that a new certificate issue to the purchaser, and, at the same time, gives the secretary a written notice of his intention to sell the stock and requests that such notice as may be required be given to the other stockholders, and the purchaser receives no offer or proposal from the company or from any of its stockholders for the purchase of the stock within ten days after the service of the notice, he is entitled to have the transfer of the stock recorded on the books of the corporation and a new certificate issued in lieu of the one he surrendered, and he may enforce that right by mandamus.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 468.]

Appeal from First Judicial District Court, Parish of Caddo; John R. Land, Judge.

Mandamus by the State, on relation of George C. Scott, against the Caddo Rock Drill Bit Company, to compel it and its president and secretary to record on its books a transfer of shares of its capital stock to relator, and to issue to him a new certificate in lieu of one delivered to the secretary. Relator's demand rejected, and he appeals. Judgment annulled, and ordered that the peremptory writ of mandamus issue compelling president and secretary to issue to relator a certificate of stock.

Hardy & Atkinson and Hardy, Grogan & Percy, all of Shreveport, for appellant. Otis W. Bullock and Blanchard & Smith, all of Shreveport, for appellee.

O'NIELL, J. This is a proceeding by mandamus to compel the defendant corporation and its president and secretary to record on the books of the corporation the transfer of 26 shares of the capital stock to the relator, and to issue to him a new certificate in lieu of the one he delivered to the secretary.

The relator bought the stock from one G. A. Humason, who was one of the original incorporators and vice president of the company. The president and secretary refused to record the transfer on their books or to cancel the certificate issued to Humason and issue a new one to the relator, on the ground that Humason had failed to give the company notice of his intention to sell the stock ten days before selling it to the relator, according to a requirement in the charter of the corporation.

On that ground the district court rejected the relator's demand, and he has appealed.

The charter of the corporation, dated the 19th of November, 1912, contains the following provision, viz.:

"No stock of this corporation shall be sold by any holder thereof in open market except after ten days' prior notice of intention to sell

has been given the company, during which time the other stockholders shall have the privilege of purchasing the same; and this clause shall be printed on the face of each certificate of stock issued by the company."

The stock certificate issued to G. A. Humason for 27 shares, and in fact every certificate of stock issued by the corporation, bore the clause quoted above, printed in red ink across its face.

On the 13th of June, 1913, Humason transferred to Dr. T. E. Williams one of the shares of stock represented by the certificate for 27 shares, by signing a written assignment upon the certificate.

On the 3d of December, 1913, the relator purchased the remaining 26 shares at a price exceeding $2,000, which was paid in cash. Before paying the price or receiving the certificate, the purchaser required, and the seller made, an affidavit, signed before a notary public, declaring that he (Humason) had given written notice to the Caddo Rock Drill Bit Company, through its secretary, more than 15 days before the 29th of November, 1913, of his intention to sell his stock in the company, and that he had had no offer or bid from the company or its stockholders for the purchase of the stock. Thereupon the relator paid the price and received the certificate.

There is no doubt that the relator bought the stock in good faith, believing that Humason had actually given notice to the secretary of the corporation, as stated in the affidavit. Nor can it be inferred from the evidence in the record that Humason's affidavit that he had given the notice to the secretary of the company was a willful or deliberate falsehood. He had on a previous occasion served a written notice on the secretary of the company of his intention to sell his stock; but, after the notice was served, and on the same day of the service, the wife of the secretary loaned to Humason, on a pledge of the stock, the money which he needed and had intended to realize by a sale of the stock; and Humason then instructed the secretary to destroy the notice, which the secretary did without having notified the other stockholders. On that occasion Humason delivered the stock certificate to the wife of the secretary, as collateral security for the loan, and it is perhaps the notice that was given to the secretary on that occasion that was referred to in the affidavit which Humason signed when he afterwards sold the stock to the relator. The case, as presented, therefore is that, although the relator believed, and was warranted in the belief, that the notice of intention to sell the stock had been served upon the secretary of the corporation, as required by the charter, the notice had been withdrawn and was without effect.

The relator's counsel contend that the provision in the charter requiring previous notice of an intention to sell the stock before it can be transferred to an outsider is contrary to the law of this state, and is invalid. He refers to Act No. 180 of 1904, declaring that the delivery of a stock certificate of a corporation to a bona fide purchaser or pledgee for value, together with a written transfer of the same or a written power of attorney to sell or transfer it, signed by the owner of the certificate, shall be a sufficient delivery to transfer the title as against all parties, although such transfer shall not affect the right of the corporation to pay any dividend due upon the stock, or to treat the holder of record as the holder in fact, until such transfer is recorded on the books of the corporation, or a new certificate is issued to the person to whom it has been transferred. And he refers to the provision in section 1 of Act No. 180 of 1910 that the title to a stock certificate and the shares represented by it can be transferred by the delivery of the certificate indorsed, either in blank or to a specified person, by the person appearing by the certificate to be the owner

of the shares represented by it, notwithstanding the charter or by-laws of the corporation issuing the certificate, and the certificate itself, provide that the shares represented by it shall be transferable only on the books of the corporation or shall be registered by a registrar or transferred by a transfer agent. He also refers to the proviso in articles 433 and 445 of the Civil Code that the rules and regulations adopted by private corporations for their own government shall not be contrary to the laws of the state or of the political society of which they are members or contrary to the interest of others.

In the alternative, the relator's counsel contends that, if that restriction upon the right of a stockholder to sell his stock was not an illegal provision in the charter, it could not affect the negotiability of the stock certificate. In that connection he refers to the provision in section 15 of Act No. 180 of 1910 that there shall be no lien in favor of a corporation upon the shares represented by a certificate issued by such corporation, and that there shall be no restriction upon the transfer of shares so represented, by virtue of any by-law of such corporation or otherwise, unless the right of the corporation to such lien, or the restriction, is stated upon the certificate. He argues that the restriction stated on the certificate requiring ten days' previous notice of an intention to sell the stock did not and could not inform any one intending to purchase the stock whether the notice was or was not given; that it could only require a person intending to purchase the stock to take reasonable precaution to ascertain that the notice was given. Hence he contends that, if in fact the notice was not given, that was a latent or an undisclosed impediment to the right to transfer the stock, and it could not affect the negotiability of the instrument. In that connection he refers to the Act No. 215 of 1912, being a statute to protect corporations, persons, firms, and transfer agents dealing in or transferring stocks, where the transferor has possession of the stock transferred and where the stock stands in the name of the person, corporation, or firm transferring it, or is indorsed over to said person, corporation, or firm, in full or in blank.

We find it unnecessary to pass upon any of the foregoing contentions made by the learned counsel for the relator, because, under another contention urged by them, the relator's right to the relief prayed for is absolute. We refer to the fact that, when the relator's attorney handed to the secretary the certificate of stock indorsed by G. A. Humason, with a written request that 26 shares be transferred by the issuance of a new certificate therefor to George C. Scott, he handed the secretary another writing, signed by the attorney of George C. Scott, as follows, viz.:

"I take this method of notifying the Caddo Rock Drill Bit Company, of which you are secretary, of the fact that my client, Mr. George C. Scott, is the owner of 26 shares of the stock of the Caddo Rock Drill Bit Company and desires by this letter to give the company notice of his intention to sell said stock. Please be kind enough to give the stockholders such notice of this intention of the sale as may be required."

The secretary signed and returned to the attorney of the relator a receipt which had been prepared by the attorney, as follows, viz.:

"Received of G. W. Hardy, attorney for George C. Scott, stock certificate No. 13 for 27 shares of the stock of the Caddo Rock Drill Bit Company, Shreveport, La., with instructions to make transfers on the books of the company, transferring one share to Dr. T. E. Williams and 26 shares to Geo. C. Scott, the one share of said stock having been sold and transferred by G. A. Humason as per transfer order on the back of said certificate, dated 13th day of June, 1913, and the 26 shares having been sold and transferred by G. A. Humason to Geo. C. Scott, of Houston, Harris county, Tex., as shown by order of transfer dated 3d day of December, 1913."

The officers of the corporation retained the stock certificate in their possession, but de-

clined to transfer the stock, on the ground that the notice of the intention to transfer it had not been given by G. A. Humason, in accordance with the requirement of the charter. And they declined to recognize the notice given by the attorney of Geo. C. Scott of the latter's intention to sell the stock, on the ground that he was not the owner of it. In our opinion, that position taken by the officers of the defendant company was arbitrary and unwarranted.

On the eighteenth day after delivering to the secretary the stock certificate, demand for its transfer, and notice of intention to sell the stock the relator served another written demand for the transfer of the stock and the issuance of a new certificate. Receiving no response to either of his demands, he notified the corporation in writing that, unless the stock certificate should be immediately issued, he would institute suit to compel the issue and delivery of the certificate.

Assuming that the clause in the charter of the corporation requiring that ten days' prior notice be given to the secretary of the intention of a stockholder to sell his stock was a valid restriction on the negotiability of the instrument, and that it was binding upon the transferee, its only effect was to preserve to the other stockholders the privilege of purchasing the stock at any time during a period of ten days. That was the purpose expressed in the restriction printed on the certificate. It did not and could not have the effect of rendering the stock inalienable, or of rendering a sale of it, without the prior notice of the intention to sell, absolutely null.

It was of no concern to the other stockholders of the company or its officers that the notice of the intention to sell the stock was given by Geo. C. Scott instead of G. A. Humason, so long as the stockholders and officers were assured, by the surrender of the stock certificate indorsed by Humason, that Geo. C. Scott had actually bought the stock and acquired the certificate. The officers or stockholders had no interest in demanding, and it does not appear that they did demand, that the stock certificate should be returned to Humason, and that he should give the notice of intention to sell it and give the other stockholders the ten days in which to make an offer to buy it. That would have been a vain and futile ceremony. "Lex neminem cogit ad vana seu inutilia peragenda." Our conclusion is that the relator is entitled to the relief prayed for.

The judgment appealed from is annulled, and it is now ordered, adjudged, and decreed that the relator, Geo. C. Scott, is the owner of 26 shares of the capital stock of the defendant corporation, the Caddo Rock Drill Bit Company. It is ordered that a peremptory writ of mandamus issue commanding the president and secretary of the corporation to issue to the relator a certificate of stock for the 26 shares; the defendants are to pay all the costs of this proceeding.