## No. 10,820.

THE STERLING LOAN & INVESTMENT CO., ET AL. *v.* LITEL.

Decided February 4, 1924.   Rehearing Denied March 3, 1924.

Action against the officers of a corporation to restrain alleged illegal acts, and for other relief.   Judgment for plaintiff.

### *Affirmed.*

### *On Application for Supersedeas.*

1.  CORPORATIONS—*By-laws—Limiting Stockholders.*  A by-law of a corporation to the effect that no stockholder should sell his stock to persons outside of the company, without first offering it to the other stockholders, held valid.

2.  *Conspiracy—Transfers of Stock.*  Transfers of corporate stock pursuant to a conspiracy to defraud, set aside on suit of the defrauded stockholder.

3.  *Claims—Liability.*  Directors of a corporation cannot use the assets and property of the company to pay debts for which it is in nowise liable.

4.  *Salaries of Officers.*  In the absence of a vote of the stockholders, resolution, by-law or other authority, the directors of a corporation cannot vote salaries to its officials.

5.  *Salaries of Officers.*  Salaries voted to the officials of a corporation by the directors, held excessive and not justified by profits and business of the company.

*Error to the District Court of Logan County, Hon. L. C. Stephenson, Judge.*

Mr. T. E. MUNSON, for plaintiffs in error.

Messrs. COEN & SAUTER, for defendant in error.

*Department Three.*

MR. JUSTICE SHEAFOR delivered the opinion of the court.

A RATHER extended statement of the facts seems to be

necessary for a full understanding of the conditions out of which this litigation arose.

It appears that during the month of March, 1920, W. E. Whittier, L. A. Whittier, and A. L. Litel, organized a corporation, known as The Sterling Loan and Investment Company, which will be hereinafter referred to as the Sterling Company. At the time of the organization of the company, the three men named were the only stockholders. The capital stock of the corporation was divided into 2,000 shares, having a par value of $100 each. Of these shares, L. A. Whittier had 667, W. E. Whittier 666, and A. L. Litel 667. Since its incorporation, it has been a going concern, with no change in its stockholders, until the second day of January, 1923, when L. A. Whittier claims to have sold 5 shares for which certificates were issued to E. S. George, and 2 shares for which certificates were issued to D. R. Paschal. During this time W. E. Whittier and L. A. Whittier each held 15 shares of stock in the Farmers National Bank of Sterling, and Litel held 10 shares of stock in said bank, the shares standing in the individual names of the parties. W. E. Whittier was one of the board of directors of the bank. On or about December 1, 1920, the bank failed, a reorganization was effected, and a new bank organized, known as the Sterling National Bank, which latter institution acquired a large portion of the assets of the old bank, and assumed certain of the liabilities of the old bank. Litel took no stock in the Sterling National Bank, but the Whittiers took 40 shares of its stock, which were taken in the name of W. E. Whittier, and for which the Whittiers were to pay the sum of $4,800. Whittier claims that the 40 shares of the stock in the new bank were taken for the Sterling Company, and not for themselves, as individuals, and that he paid for the same out of money belonging to the Sterling Company, and on deposit in the bank, but it appears that this stock was never placed upon the books of the Sterling Company as an asset of the company, until the 5th day of February, 1923, Litel, as secretary of the company, having charged the amount to the Whittier

Brothers individually. At the time of the failure of the Farmers National Bank, the Sterling Company had on deposit with the bank about $4,800. Litel claims he consented that the deposit of $4,800 of the Sterling Company might be borrowed by the Whittiers and used in the purchase of the 40 shares of stock, and that in pursuance of his consent, the Whittiers did borrow the $4,800, and purchased the stock, which was taken in the name of W. E. Whittier, this having been done with the consent of the Comptroller of the Currency. There is evidence that the charges made therefor, against the two Whittiers, were so entered on the books, at the request of W. E. Whittier. Not long after the organization of the Sterling National Bank, it also failed. It appears that on account of the failure of the two banks, and the individual connection of W. E. Whittier therewith, he incurred certain liabilities, consisting in the assessment of $7,000, by reason of his being a director in the Farmers National Bank, and a liability in the sum of $4,800, representing the loss on the purchase of the 40 shares of stock in the Sterling National Bank. After these failures, and prior to the first of January, 1923, the Whittiers desired to charge the liabilities mentioned against the Sterling Company, but Litel refused to allow this to be done, and refused to recognize any liability of the Sterling Company therefor. The court found that on the first day of January, 1923, the Whittier Brothers were indebted to the Sterling Company,—W. E. Whittier, in the sum of $1,018.17, L. A. Whittier, in the sum of $1,374.37, and that the copartnership previously existing, known as the Whittier Brothers, composed of W. E. Whittier and L. A. Whittier, were indebted to the Sterling Company, in the sum of $7,678.95. At this time it appears that the Sterling Company, according to its books, was owing Litel $1,946.06. On the 5th day of February, 1923, a meeting of the stockholders of the Sterling Company was held, at which a board of three directors of the company was chosen, and W. E. Whittier, L. A. Whittier, and E. S. George, were elected. Following that, officers were elected,

of which W. E. Whittier was elected president, L. A. Whittier, vice-president and treasurer, and E. S. George, secretary. At this meeting, after the election of the board of directors, they proceeded to the allowance of certain bills, against the company, one for $4,800, representing the 40 shares of stock of the Sterling National Bank, taken by the Whittiers, another in the sum of $7,000, representing an assessment against W. E. Whittier, as a director of the Farmers National Bank, and one for $766.35, salary claimed to be due to E. S. George, which had been charged before that time to Whittier Brothers. On the 6th day of February, 1923, the board of directors of the Sterling Company held a special meeting. At this meeting the board of directors voted a salary of $10,000 per year to W. E. Whittier, as president, a salary of $10,000 a year to L. A. Whittier, as vice-president and treasurer, and a salary of $35 per month to E. S. George, as secretary.

Following the foregoing proceedings, Litel instituted this suit against the Sterling Loan and Investment Company, W. E. Whittier, L. A. Whittier, E. S. George, and D. R. Paschal, to restrain the defendants from the commission of certain acts, and asking that the bills allowed against the Sterling Loan and Investment Company be declared illegal and fraudulent; that the stock issued to the defendants Paschal and George be cancelled, and that the salaries voted at the directors meeting be held excessive, fraudulent and void.

The parties will be designated here as in the court below.

The trial court made special findings in favor of plaintiff and rendered judgment against the defendants as prayed in the complaint.

The defendants prosecute this writ of error and move that the same be made a supersedeas.

The propositions which are presented with much force in defendants' brief, and upon which they seek a reversal, may be stated as follows:

(1) The court erred in holding that the transfer of

stock by L. A. Whittier to E. S. George and D. R. Paschal, was void.

(2)    The court erred in holding that the plaintiff Litel continued to be the secretary and one of the board of directors of the company, after the stockholders' meeting of February 5, 1923.

(3)    The court erred in holding void the action of the stockholders, at the meeting of February 5, 1923, in allowing claims against the company.

(4)    The court erred in holding that the salaries voted to the Whittiers were excessive, and that they were not entitled to any compensation for their services to the Sterling Company, and in holding that the salary of George, as secretary of the company, was excessive, illegal, fraudulent and void.

The court found that Litel paid, as a consideration for his stock in the Sterling Company, a sum slightly exceeding $34,000. The court further found, that at the time of the organization of the Sterling Company, the by-laws, as adopted, contained this provision:

"No stockholder shall sell his stock to any other person outside the company, without first giving the stockholders the chance to buy the stock at the same figure as he could get for same, to one not having stock in the company."

In that connection, the court further found that the by-law quoted was adopted pursuant to an agreement, prior to the incorporation of the company, to the effect that the company should be limited to the three original stockholders—the two Whittier brothers and Litel—except as additional stockholders might be permitted in the manner provided in the by-laws. The court further found that the sale and transfer of the stock to George and Paschal was made in furtherance of a conspiracy, between the Whittiers, which had for its purpose, the absorption of the assets of the company by the Whittiers. The court further found that the acts and doings of the stockholders at the meeting of February 5, in ousting Litel from the directorate of the company, and in charging certain indebtedness against the

company, and that the acts and doings of the directors at the meeting of February 6, were illegal and void, and in furtherance of a conspiracy to absorb the assets and property of the company, and to wrong and defraud the plaintiff.

An examination of the record discloses evidence sufficient to justify the court's findings. The evidence discloses that the stock transferred to George and Paschal were never offered to Litel, nor was he ever given an opportunity to purchase the same at any price. The evidence also reveals the fact that the salaries voted to Whittiers were for services, to be performed in the future, as officers of the company. The evidence further discloses that the profits of the company, from the time of its organization, up to the time these salaries were voted, was slightly less than $4,000, covering a period of over 2 years.

We are of the opinion that the court was right in holding that the transfers of stock to George and Paschal were void, and should be cancelled. It is quite clear that the transfers were not made in accordance with the provision of the by-laws quoted, and as the stock transferred had not been offered to Litel and he given a chance to buy it at a definite price, of course, there was no waiver of the provision, as claimed by defendants. We are aware that there is a decided conflict in the authorities upon the question of the validity of a by-law, of a corporation, restricting the right of transfer of the shares, but we think the case of *Nicholson v. Franklin Brewing Co.*, 82 Ohio St. 94, 91 N. E. 991, 137 Am. St. Rep. 764, 19 Ann. Cas. 699, and the case of *Cook Railway Signal Co. v. Buck,* 59 Colo. 368, 371, 149 Pac. 95, are authority for upholding the validity of the by-law in question, and that the purchasers of the stock, George and Paschal, bought their stock with notice of the by-law. It seems quite clear that even if the by-law could not be held valid, as such, under the finding of the trial court it should be held valid as an agreement.

In 14 C. J. 669, § 1040, it is said: "* * * It has been held, however, that if the by-law is invalid as a by-law it

may be binding as an agreement on the stockholders who unanimously adopt it, * * *." *Model Clothing House, et al. v. Dickinson, et al.,* 146 Minn. 367, 178 N. W. 957.

Irrespective of this question, however, if the conspiracy existed, as found by the court, the transfers of stock to George and Paschal, should be set aside and cancelled.

The claims allowed against the company at the stockholders' meeting held February 5, were clearly claims for which the company was not liable, and they should not have been allowed.

It is true, of course, that the stockholders have the right to allow valid claims against the company, but they cannot use the assets and property of the company to pay debts, for which the company is in nowise liable. We are of the opinion that the action of the board of directors fixing the salaries of the officials was ineffective. The board of directors had no authority given them by the stockholders by any vote, resolution, by-law, or otherwise, and without such authority, the board could not act. We think the trial court was right in holding that the allowance of the claims mentioned, and the voting of the salaries in question, were for the purpose of absorbing the assets and property of the Sterling Company, and for the purpose of defrauding the plaintiff.

The question, whether the officers and directors of a corporation, are entitled to compensation for their services, as such, is not before us. What we are holding is, that in the circumstances of this case, the officers and directors cannot, without authority of the stockholders, vote salaries to the officers of the company, in advance of any service performed by them, as was done in this case; and, furthermore, it may be said in this connection, that the salaries voted were excessive, and not justified by the profits and business of the company.

The supersedeas is denied and the judgment affirmed.

MR. CHIEF JUSTICE TELLER and MR. JUSTICE CAMPBELL concur.