166 So.2d 357 (1964)
Lois B. PHILLIPS et al., Plaintiffs-Appellants,
v.
John G. NEWLAND et al., Defendants-Appellees.
No. 1195.
Court of Appeal of Louisiana, Third Circuit.
July 10, 1964.
Rehearing Denied July 30, 1964.
Writs Refused October 14, 1964.
*358 Dugas, Bertrand & Smith, by Lucien Bertrand, Jr., and Frank Smith, Jr., Lafayette, for plaintiff-appellant.
Liskow & Lewis, by Charles C. Gremillion, New Orleans, for defendant-appellee.
Before TATE, FRUGÉ and SAVOY, JJ.
FRUGÉ, Judge.
This case and its companion case, No. 1196, Newland v. Curfman, 166 So.2d 362, arose out of the sale of certain shares of stock by John Newland to Charles J. Fontenot, Mrs. Virginia Fontenot, C. C. Eiswirth and Neal Aucoin. Both cases will be discussed in this opinion, but a separate decree will be rendered in No. 1196.
The facts are not in dispute. They are as follows: South College Cleaners, Inc., was incorporated and domiciled in Lafayette Parish on August 8, 1960. The incorporators, who were also named directors and officers in the articles, and the number of shares held by each were as follows:

John G. Newland,
 President 102 shares
C. J. Palmer,
 Vice President 44 shares
Hugh W. Curfman,
 Treasurer 44 shares
Lois B. Phillips,
 Secretary 10 shares

This gave John Newland the controlling interest in the corporation. Thereafter Newland operated the business. Although the articles provided for yearly shareholder meetings, none were held.
On July 1, 1963, Newland received an offer from four non-stockholders, Mr. Fontenot, Mrs. Fontenot, Mr. Eiswirth and Mr. Aucoin, to purchase 101 shares of his stock for $46,250. These prospective purchasers stated in their offer that the "offer is contingent on all of said 101 shares of stock being sold to the undersigned and no portion of the offered price is to be considered as allocated to any share or group of shares less than the whole. If the contingency for the transfer of the whole of said 101 shares is not complied with this offer is null and void." (Trial Record Page 55).
Since there was a provision in the articles that any shares of stock to be sold had to be offered first to the other shareholders, Newland transmitted information of the offer to Mrs. Phillips, secretary of the corporation, and she in turn notified the other shareholders of the offer.
On July 5, 1965, Mrs. Phillips notified Newland that she wished to exercise her opportunity to purchase under the articles of incorporation. She stated that she was entitled to purchase a proportional part of the 101 shares to be sold, based on her proportional interest in the corporation. Accordingly, on July 30, 1963, Mrs. Phillips tendered a draft to Newland in the amount of $4,725.73, representing the purchase price for 10.22% of the 101 shares to be sold.
Newland rejected Mrs. Phillips' offer, stating that he considered her proposal only a counter offer. Newland stated that his offer to sell was for the whole of the 101 *359 shares, not for any portion less than the whole.
There is no evidence in the record of any attempt by any of the other stockholders to purchase any of the 101 shares.
On August 2, 1963, Newland sold the 101 shares to Mr. Fontenot, Mrs. Fontenot, Mr. Eiswirth and Mr. Aucoin.
On August 29, 1963, Newland, as President of the corporation, gave written notice to the shareholders of a shareholders' meeting to be held on September 10, 1963. The meeting was convened and all stockholders were present, including those who had recently secured the 101 shares from Newland. When Mr. Curfman, Mr. Palmer and Mrs. Phillips were informed that the meeting was to elect directors, they protested and left the meeting. The meeting continued and elected Mr. Newland, Mr. Eiswirth, Mr. Fontenot and Mr. Aucoin as directors. These new directors met immediately afterward and elected Newland as President, Fontenot as Vice President, Eiswirth as Secretary and Aucoin as Treasurer.
Suit No. 1195 was filed on September 12, 1963, by Mrs. Phillips, Mr. Curfman and Mr. Palmer, praying that the court declare the transfer of the 101 shares by Newland null and void. They also prayed that the court decree and action taken at the September 10, 1963, stockholders' meeting null and void, since the meeting was illegally convened.
Newland then brought suit No. 1196 against Mr. Curfman, Mr. Palmer and Mrs. Phillips, praying that the court decree that they are not members of the board of directors of the corporation and enjoining them from acting in any manner as officers or directors of the corporation.
The trial court declared that the transfers of stock by Newland were valid transfers. However, it declared that the meeting of September 10, 1963, was illegally convened. It issued a preliminary injunction in No. 1195, pending trial on the merits, prohibiting the new stockholders from taking any action of a corporate nature in the capacity of officers or directors under and by virtue of any authority vested in them by the meetings of September 10, 1963. In Suit No. 1196, the trial judge dismissed Newland's prayer for a preliminary injunction.
Both judgments have been appealed. Since there is no further evidence to be included in the record, parties for both sides have stipulated that this Court should consider the cases on their merits, to aid in concluding the litigation. We shall therefore render decisions on the merits of the two cases.
Transfer of the 101 shares of stock. Article IV of the articles of incorporation of South College Cleaners, Inc., contains the following paragraph:
"In the event any holder or holdrs of common stock of this corporation should desire to sell such common stock, or any portion thereof, such stock shall be first offered to the stockholders of record, which offer of sale shall be submitted in writing to the Secretary of the corporation, who shall thereupon notify the stockholders of record of the offer of such stock for sale, and the stockholders of record shall be entitled to purchase such proportionate share of the stock offered for sale as corresponds with their respective stockholdings (excluding the stock offered for sale in computing the respective stockholdings), and, in the event any stockholder or stockholders should waive the right granted to them to purchase, the right thus waived shall inure to the benefit of the remaining stockholders on a proportionate basis. After the receipt of the offer of sale of any such stock from a stockholder of record, as provided for herein, the stockholder shall be granted a period of thirty (30) days within which to accept or reject, in whole or in part, the offer of such stock for sale *360 on the basis of any qualified offer which may have been received for such stock. In the event no qualified offer has been received, then the question of price is one to be determined by negotiations between the parties, but it is stipulated and provided that the common stock of this corporation shall not be sold to nonstockholders whenever there be a stockholder or stockholders of record desirous of purchasing said stock within the period of thirty (30) days mentioned herein, at the same price which may have been offered by nonstockholders."
Under this article any stockholder wishing to transfer his stock to one not a stockholder has to first offer to sell his stock to the other shareholders in the corporation. Such restrictions are valid under Louisiana law. LSA-R.S. 12:538; State ex rel. Scott v. Caddo Rock Drill Bit Co., 141 La. 353, 75 So. 78; 4 La.L.Rev. 441. Thus, this whole question depends on an interpretation of the restrictive clause. And, in interpreting such clauses, it must be remembered that the law favors unrestrained transferability of stocks and restraints on alienation must be strictly construed. 18 C.J.S. Corporations § 391.
Plaintiffs take the position that any time a shareholder wishes to sell his stock that another shareholder has the right to purchase from the block of stock up for sale a number of shares equal to the percentage of stock he owns in the entire corporation. Under this argument this right exists even though the remaining shareholders do not wish to purchase their proportionate part and even though the selling shareholder wishes to sell his stock as a block and does not wish to divide it. Under such a situation the selling shareholder could be forced to divide his stock in order to sell; if he did not wish to do so, he would have to refrain from selling any of his stock.
Mr. Newland argues that Mrs. Phillips' offer was only a counter offer. He states that he wished to sell his controlling interest as a whole and did not wish to divide it up. Either 101 shares as a whole or no shares at all were to be sold. Since no offer was made by the other stockholders to buy all of the 101 shares as a block, Mr. Newland contends that his offer was not accepted by the other shareholders within the 30 day period set forth in the articles and therefore he was at liberty to sell the block of 101 shares to outsiders. He argues that Mrs. Phillips' offer to buy only 10.22% of the 101 shares was merely a counter offer which he did not accept.
A reading of the record draws us to the conclusion that Mr. Newland was at liberty to transfer the stock when he did. The record clearly reflects that the prospective purchasers wished to purchase all 101 shares of the stock in a block, representing controlling interest in the corporation, for a stated price, and they were not willing to purchase unless they got all 101 shares. They were not willing to purchase 101 shares minus 10.22%, which would not have been a controlling interest in the corporation. During a 30 day period the other stockholders were authorized to purchase 101 shares "at the same price which may have been offered by non-stockholders." Since no stockholder or stockholders offered to purchase the entire block of 101 shares at the same price which was offered by non-stockholders within a 30 day period, then Newland was free after that time to complete the sale of the 101 shares to the non-stockholders. Mrs. Phillips' offer to purchase 10.22% of the 101 shares was not an acceptance of the offer to sell the entire 101 shares as a block, but it was merely a counter offer which was not accepted by Mr. Newland. To uphold plaintiffs' position would be to put Newland in a position where he would be unable to sell a controlling interest in the corporation, a factor which undoubtedly made the block of stock even more attractive.
We therefore affirm the trial court's holding that the pre-emptive rights of the shareholders were not exercised in strict compliance *361 with Article IV of the articles of incorporation and therefore the transfer of stock by Newland to the non-stockholders was valid.
The shareholders' meeting of September 10, 1963. The shareholders' meeting of September 10, 1963, was called by Newland as President. No mention was made in the notice as to what business was to be acted upon at this meeting.
Plaintiffs take the position that this meeting was a special meeting and, being such, LSA-R.S. 12:30 required that notice of the purpose of the meeting be given to the stockholders prior to the meeting. Since this was not complied with, plaintiffs take the position that the meeting of September 10, 1963, was illegally constituted and that therefore any action taken at the meeting was null and void.
Newland states that the meeting was a regular meeting of the shareholders and, accordingly, no notice of the matters to be discussed had to be given.
Under the articles of incorporation an annual meeting of the stockholders was to be held on August 8 of each year. However, prior to September 10, 1963, no shareholders' meeting of any kind was held.
We feel that the record clearly reflects that the meeting of September 10, 1963, cannot be considered an annual meeting of the stockholders of the corporation. The whole set of circumstances surrounding this case clearly leads to the conclusion that this meeting was not intended to be an annual getting together of the shareholders to discuss the business of the corporation.
We must therefore declare, as did the trial court, that the meeting of September 10, 1963, was illegally convened since no notice was given to the shareholders of the matters to be taken up at this special meeting. Therefore, all action taken at the meeting, including election of new directors, was null and void. It therefore follows that when the illegally elected directors later met and selected officers, they were doing so without authority.
The trial judge granted a preliminary injunction in No. 1195, enjoining Mr. Fontenot, Mrs. Fontenot, Mr. Eiswirth and Mr. Aucoin from in any manner taking corporate action as officers or directors under the September 10, 1963, meeting. We shall make this injunction permanent. By doing so, however, we do not in any way restrain the officers or present stockholders of the corporation from taking any action in the future which they are legally entitled to take in regard to calling stockholders' meetings and selecting directors and officers. We are merely declaring that the shareholders' meeting of September 10, 1963, was illegally constituted and any action taken at that meeting is null and void.
It logically follows that Newland's suit, No. 1196, should be dismissed.
Decree. It is hereby ordered, adjudged and decreed that the transfers of August 2, 1963, by John G. Newland of 25 shares of common stock in South College Cleaners, Inc. to Mrs. Virginia Green Fontenot, 25½ shares of common stock in South College Cleaners, Inc. to Charles J. Fontenot, 49½ shares of common stock in South College Cleaners, Inc. to Clement C. Eiswirth, and 1 share of common stock in South College Cleaners, Inc. to Neal C. Aucoin be declared valid transfers, and the secretary of said corporation is hereby ordered to issue said transferees certificates of stock evidencing their ownership of said shares.
It is further ordered, adjudged and decreed that Charles J. Fontenot, Mrs. Virginia Green Fontenot, Clement C. Eiswirth and Neal Aucoin are permanently enjoined from in any manner taking any action of a corporate nature in the capacity of officers or directors of South College Cleaners, Inc., under and by virtue of any authority purportedly vested in them by the shareholders' meeting of that corporation held on September 10, 1963.
In all other respects the judgment of the district court is affirmed. Plaintiffs and *362 defendants are to equally divide the costs of this appeal.
Amended and affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.