Dennis JOSLIN, Plaintiff,

v.

The SHAREHOLDER SERVICES GROUP, Actuarial Computer Technology, Inc., and John Thomas Pass, Defendants.

Civil Action No. H–96–0537.

United States District Court,
S.D. Texas,
Houston Division.

Oct. 28, 1996.

James Haralson Pearson, Pearson & Pearson, Houston, TX, for·Plaintiff.

Jeffry J. Cotner, Gibbs & Bruns, Houston, TX, for Defendant.

## MEMORANDUM AND ORDER GRANTING MOTION TO DISMISS

HOYT, District Judge.

The Court considers the defendants' motion to dismiss the plaintiff's complaint for failure to state a claim upon which relief can be granted. Based upon a review of the complaint and the facts as alleged by the plaintiff, as well as the responses and briefs by both parties, the Court grants the defendants' motion·to dismiss.

## I. Statement of Facts and Procedural History

The plaintiff in this suit, Dennis Joslin, purchased from the Federal Deposit Insurance Corporation (FDIC) a promissory note and a security interest in shares of stock pledged as collateral for the note. The stock consisted of 22,904 shares of stock in Distributive Network of America, Inc. (Distributive), which had merged with a subsidiary of The Shareholder Services Group (TSSG) to form Actuarial Computer Technology, Inc. (ACTI). The FDIC had acquired the note and the security interest when it was appointed receiver for the defunct Metropolitan National Bank (Metropolitan). The note, made payable to Metropolitan, was executed by John Thomas Pass for the principal amount of $300,252.97. The note matured in 1990, but remained unpaid while Pass was engaged in bankruptcy proceedings. When Pass was discharged from bankruptcy in 1991, the debt was also discharged as a personal obligation. However, the FDIC's lien on the stock survived the discharge, and in 1992, the bankruptcy court permitted the FDIC to foreclose its lien.

Unbeknownst to the FDIC, on October 29, 1993, Pass presented TSSG with an affidavit claiming that the original stock certificates had been mislaid, lost, stolen, or destroyed and sought payment for the stock. He also failed to mention the FDIC's lien on the stock. TSSG paid Pass a total of $97,000 for the stock, without knowledge that the original stock certificates were in the possession of the FDIC.

At issue in this case is the written restriction on alienation printed on the face of the stock certificates. The restriction states,

NONE OF THE SHARES EVIDENCED BY THIS CERTIFICATE SHALL BE SOLD, TRANSFERRED, PLEDGED OR ASSIGNED WITHOUT THE PRIOR WRITTEN CONSENT OF THE COMPANY, AS A SALE, TRANSFER, PLEDGE OR ASSIGNMENT OF SUCH SHARES MAY BE CONSTRUED TO CONSTITUTE A VIOLATION OF THE FEDERAL SECURITIES ACT OF 1933, AS AMENDED, AND/OR THE SECURI-

TIES OR "BLUE SKY" LAW OF ONE OR MORE STATE JURISDICTIONS.

The question for resolution is whether the Metropolitan Bank, and later the FDIC and the plaintiff, received any interest in the stock when Pass pledged the stock to the bank in violation of this express restriction.

The plaintiff seeks a declaratory judgment that he is the owner of the stock certificates. He also seeks all dividends and stock splits that have accrued since the FDIC acquired the shares. In the alternative, the plaintiff requests an accounting of all monies paid by or to the defendants and a judgment against the defendants, jointly and severally, for that amount. The plaintiff also prays for a foreclosure of his security interest.

The defendants,[1] TSSG and ACTI, counter that the plaintiff's complaint on its face shows that he is not a stockholder entitled to any relief because his claim to the stock is only as an assignee, having taken the stock as collateral for a loan. Because of the stock restriction that conspicuously appears on the face of the stock certificates, the bank never received a valid pledge and the plaintiff acquired no greater rights than the bank.

## II. Discussion and Authorities

### A. The Standard for Granting a Motion to Dismiss

The defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The Court initially denied the motion, but upon reconsideration, is of the opinion that the motion should be granted. In considering whether to grant a motion to dismiss, a court considers the allegations in the complaint, as well as any attached exhibits. *Burch v. Apalachee Community Mental Health Services, Inc.,* 840 F.2d 797, 798 (11th Cir.1988); 5A Wright & Miller, *Federal Practice and Procedure* § 357 (1990); *see also Case v. State Farm Mutual Automobile Insurance Co.,* 294 F.2d 676, 676–77 (5th Cir.1961) (dismissing complaint based on written contract attached to complaint as an exhibit). The court must construe the complaint in the light most favorable to the plaintiff, taking the allegations as true. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Miller v. Stanmore,* 636 F.2d 986, 988 (5th Cir.1981). Because courts disfavor motions to dismiss for failure to state a claim, *Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir.1982), it must appear "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

In the instant case, the plaintiff's allegations are immaterial and fail to state a claim, if he never obtained an interest in the stock. Pass's pledge of the stock to Metropolitan Bank, in violation of the express restriction on the face of the stock certificates, requires this Court to determine whether any interest in the stock passed to Metropolitan and, subsequently, to the plaintiff when he purchased the instruments.

To determine whether any interest in the stock passed to Metropolitan, and eventually to the plaintiff, the Court must first determine whether Pass violated the restriction on the face of the stock certificates when he pledged the certificates to Metropolitan as collateral for his note. Assuming that the restriction is enforceable under Delaware law, what is the effect of the violation on subsequent takers of the certificates? The Court begins with a discussion of whether the stock restriction was violated.

### B. Was There a Violation of the Stock Restriction?

The stock certificates provide, in boldface, capitalized type on the front of the certificates, that the shares shall not be "SOLD, TRANSFERRED, PLEDGED OR ASSIGNED WITHOUT THE PRIOR WRITTEN CONSENT OF THE COMPANY." When Pass gave the certificates to Metropolitan as collateral for the note, he

---

1. The defendant Pass did not respond, as apparently he was never successfully served with process in this complaint.

undoubtedly "pledged" them to the bank. A "pledge" is a "bailment of goods to a creditor as a security for some debt or engagement," or "a security interest in a chattel or intangible represented by an indispensable instrument . . ., the interest being created by a bailment for the purpose of securing the payment of a debt or the performance of some other duty." *Black's Law Dictionary* 1038 (5th ed. 1979). Therefore, Pass pledged the stock certificates to the bank to secure his promissory note. And, in the absence of any claim that the company consented to the pledge, the Court concludes that the stock restriction was violated.

### C. Is the Stock Restriction Enforceable Under Delaware Law?

■ The validity of any stock restriction is determined according to the law of the state of incorporation. *B & H Warehouse, Inc. v. Atlas Van Lines, Inc.*, 490 F.2d 818, 821 (5th Cir.1974). In this case, the parties agree that the law of Delaware governs because the company in question is a Delaware corporation. In the area of corporate stock restrictions, the state of Delaware has the most permissive law in the country. *See Joseph E. Seagram & Sons, Inc. v. Conoco, Inc.*, 519 F.Supp. 506, 512 (D.Del.1981) (quoting Ernest Folk, *The Delaware General Corporation Law* 197–98 (1972)). The Delaware Code provides:

(a) A written restriction on the transfer or registration of transfer of a security of a corporation, if permitted by this section and noted conspicuously on the certificate representing the security . . . may be enforced against the holder of the restricted security or any successor or transferee of the holder. . . . Unless noted conspicuously on the certificate representing the security . . . a restriction, even though permitted by this section, is ineffective except against a person with actual knowledge of the restriction.

Del.Code Ann. tit. 8, § 202(a).

■ There is no doubt that the restriction on the stock in question is "noted conspicuously" on the stock certificate. Under Delaware's Uniform Commercial Code a term is "conspicuous" when it is written so "that a reasonable person against whom it is to operate, ought to have noticed it. A printed heading in capitals . . . is conspicuous." Del. Code Ann. tit. 6, § 1–201(10). Because the stock restriction at bar appears in bold, capital letters on the front of each stock certificate, a reasonable person examining the stock certificates could not overlook the restrictive words on the face of the instruments. Thus, the stock restriction appears valid and enforceable.

The determination of the validity of the restriction is further buttressed by the express provision requiring corporate consent prior to the transfer of stock:

(c) A restriction on the transfer of securities of a corporation is permitted by this section if it:

. . . . .

(3) Requires the corporation or the holders of any class of securities of the corporation to consent to any proposed transfer of the restricted securities or to approve the proposed transferee of the restricted securities. . . .

*Id.* § 202(c)(3). The restriction prohibits the transfer or assignment of the stock without the prior written consent of the company.

The plaintiff argues that the stock restriction does not satisfy Delaware law because it is unclear and ambiguous. However, the plaintiff makes only conclusory statements to this effect, and fails to state exactly how the restriction is unclear or ambiguous. On the contrary, the restriction is written on the face of the stock certificates in plain language and complies with the requirements of section 202 of the Delaware Code. The plaintiff does not squarely address section 202's applicability in this case, or its explicit endorsement of consent restrictions such as the one at issue.

The plaintiff also charges that the stock restriction does not reasonably relate to a "valid corporate purpose." Relying on *B & H Warehouse, Inc. v. Atlas Van Lines, Inc.*, 490 F.2d 818 (5th Cir.1974), the plaintiff contends that stock restrictions should "be allowed only so long as they reasonably relate to a valid corporate purpose." *Id.* at 826–27.

Nevertheless, the decision in *B & H Warehouse* is cold comfort to the plaintiff.

In *B & H Warehouse*, the Fifth Circuit was considering the validity of a stock restriction adopted *before* the enactment section 202 of the Delaware Code. *Id.* at 821. The court relied on common-law decisions from Delaware and California that predated the enactment of section 202. *Id.* at 821–26 (citing *Lawson v. Household Finance Corp.*, 152 A. 723 (1930); *Tu–Vu Drive–In Corp. v. Ashkins*, 61 Cal.2d 283, 38 Cal.Rptr. 348, 391 P.2d 828 (1964)). Moreover, it held that the restriction in question met the "legitimate-corporate-purpose" test and would have been valid but for the fact that it was imposed *after* the plaintiff acquired the stock and without the plaintiff's consent. The restriction in the case at bar was adopted before Pass pledged his stock to the bank, and it was conspicuously noted on the face of the stock certificates.

Furthermore, section 202(c)(3) expressly allows such consent restrictions, and does not state that the restriction must be supported by a "valid corporate purpose." There is some debate as to the validity of the argument that section 202 maintains the common-law requirement that a stock restriction be supported by a reasonable business justification in order to be valid. *See* Ernest L. Folk III et al., *Folk on the Delaware General Corporation Law: A Commentary and Analysis* § 202.1 (3d ed. 1992).

However, in construing the statute, the Eighth Circuit held that "[s]ection 202(c) declares four types of restrictions valid without inquiry into the existence *vel non* of a lawful or reasonable purpose." *St. Louis Union Trust Co. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 562 F.2d 1040, 1045 (8th Cir. 1977). One of these four types of restrictions, stated in section 202(c)(3), is the restriction requiring the corporation's consent to any proposed transfer of the securities. Thus, according to this view, it is unnecessary for a corporation to justify its stock restriction by stating any corporate purpose. The statute, by expressly recognizing the validity of such restrictions, presumes a valid purpose.

Moreover, the circuit court noted that section 202(c) was adopted by the Delaware legislature in 1967 for the very purpose of eliminating the requirement, once imposed by Delaware courts, that a stock restriction must be supported by a specific justification, such as a reasonable or lawful purpose, to be enforceable. *St. Louis Union Trust Co.*, 562 F.2d at 1046. In the words of the court, section 202 was enacted "to eliminate this uncertainty by substantively validating a wide variety of commonly accepted stock restrictions." *Id.* at 1047.

Delaware case law construing section 202 is sparse. However, in addition to the above-mentioned federal cases, one Delaware trial court rejected the argument that section 202(c) sets forth restrictions that are "per se valid." *Grynberg v. Burke*, 378 A.2d 139, 142 (Del.Ch.1977), *rev'd on other grounds sub nom. Oceanic Exploration Co. v. Grynberg*, 428 A.2d 1 (Del.1981). The court in *Grynberg* stated that stock restrictions are permissible "provided [they] bear[ ] some reasonably necessary relation to the best interests of the corporation." *Id.* at 143. The court was of the opinion that section 202 merely codified the common-law rule that stock restrictions must have a reasonable corporate purpose, and that courts may decide whether a particular restriction is "reasonable." *Id.* at 142–43. The court went on to speculate that "it may be that section 202(c) places the burden of demonstrating the unreasonableness of such enumerated restrictions on the party attacking them." *Id.* at 143.

Even if it were necessary under Delaware law to assert some reasonable corporate purpose above and beyond the express authorization in the statute, the defendants have done so. They direct the Court to possible violations of federal securities and state "blue sky" laws as evidence that the corporation has a legitimate interest in avoiding an unlawful sale of its unregistered stock. This is a legitimate purpose over which the plaintiff has cast no doubt.

Given the deference that should be granted toward a stock restriction that is expressly authorized by the Code, a reviewing court should not excessively scrutinize the reason-

ableness of the restriction. As long as there is no evidence that the purpose is invalid and the restriction does not appear invalid on its face, the restriction must be upheld. Consequently, it is the Court's opinion that the stock restriction in question is supported by a reasonable corporate purpose and complies with Delaware law.

### D. What Was the Effect of the Violation of the Stock Restriction?

Having determined that the stock restriction was violated and that it is enforceable under Delaware law, the Court must determine whether the plaintiff and his predecessors acquired any interest in the stock. No clear precedent has been cited establishing what happens to an interest in stock that is transferred in violation of a valid stock restriction. Other jurisdictions have considered the issue and have reached conflicting results. Therefore, this Court must divine what Delaware's highest court likely would conclude if faced with the same issue. *Commissioner of Internal Revenue v. Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782–83, 18 L.Ed.2d 886 (1967); *Transcontinental Gas Pipe Line Corp. v. Transportation Ins. Co.,* 953 F.2d 985, 988 (5th Cir.1992).

■ The Court has reviewed some of the decisions reached in other jurisdictions, and considered them in light of the policy considerations underlying Title 8, section 202 of the Delaware Code. After reviewing decisions in other jurisdictions, and keeping in mind Delaware's policy favoring stock restrictions such as the one at issue, the Court concludes that the plaintiff has no legal or equitable title to the stock because it was transferred in violation of the stock restriction.

### 1. Survey of Other Jurisdictions Enforcing Stock Restrictions

State courts differ widely on the enforceability of stock transfer restrictions. Most courts never reach the question of who has title to the stock once it is determined that the stock was improperly transferred. This is so because, historically, many state courts disfavor restraints on the alienation of stock and, in the absence of an authorizing statute,

often have held the restraints invalid. *See* 18 C.J.S. *Corporations* § 220.

In a case similar to the one at bar, the Massachusetts Supreme Court held that a pledge of stock as collateral in violation of corporate by-laws was "prohibited" and, thus, invalid. *Monotype Composition Co. v. Kiernan,* 319 Mass. 456, 66 N.E.2d 565, 568 (1946). In that case, the defendant had signed a note and pledged stock as collateral, delivering the stock certificates to a loan company with an assignment in blank. *Id.* 66 N.E.2d at 566. The corporate by-laws, noted on the stock certificates, required stockholders to first offer the stock to the company before selling or transferring it. *Id.* 66 N.E.2d at 565–66. The court held that the delivery of the stock certificate accompanied by a transfer in blank "purported to pass the legal title to the stock and, but for the restrictive by-laws was sufficient to do so." *Id.* 66 N.E.2d at 567.

The Colorado Supreme Court reached a similar result when it held that a transfer of stock in violation of a restriction in the by-laws was void. *Sterling Loan & Inv. Co. v. Litel,* 75 Colo. 34, 223 P. 753, 755 (1924). In *Litel,* the purchasers of stock bought it with notice of the by-law that prohibited the sale to others outside the company without first offering to sell to other stockholders. *Id.* Because the transfers violated this restriction, the court voided the transaction. *Id.*

Reaching a slightly different outcome, the Kentucky Supreme Court held that an assignment of stock in violation of a valid stock restriction did not pass legal title to the stock, but it permitted the assignee an equitable lien against the assignor for the amount paid for the stock. *Carpenter v. Dummit,* 221 Ky. 67, 297 S.W. 695, 699–700 (1927). The stock had been assigned to fulfill a financial obligation to Dummit. Once the court held that the assignment was void, Dummit acquired an equitable lien against Carpenter's stock certificates. *Id.* The court then put the company on notice of the lien and stated that the company could not re-deliver the stock certificates to Carpenter, who retained the legal title, until the lien had been satisfied. *Id.* 297 S.W. at 700.

Another case, decided by the Kansas Supreme Court, held that the purchase of stock in violation of restrictions in the corporate by-laws operated as a transfer of title only between the seller and the buyer, but did not elevate the buyer to shareholder status as far as the company was concerned. *Star Mut. Tel. Co. v. Longfellow,* 85 Kan. 353, 116 P. 506, 507 (1911). Because the buyer purchased the stock with notice of the by-laws, the court held that he was bound by the restriction. *Id.* The by-laws required the consent of the corporation's officers before the stock could be transferred. *Id.* 116 P. at 506.

While these decisions hold that the company was not bound by the prohibited transfer of stock, two other jurisdictions have reached different results, although on distinguishable facts. The Louisiana Supreme Court held that a valid restriction on the transfer of stock did not render the stock inalienable or absolutely null when the stock was sold to a bona fide purchaser. *Louisiana ex rel. Scott v. Caddo Rock Drill Bit Co.,* 141 La. 353, 75 So. 78, 80 (1917). In *Scott,* the charter of the corporation prohibited the sale of stock, except with notice to the other stockholders who held options to buy. The buyer purchased the stock in good faith, believing that the seller had complied with the charter by giving notice to the corporation. *Id.* 75 So. at 78. The court held that the sale was not void, but its effect triggered the right of the other stockholders to purchase the stock during a ten-day period. *Id.* 75 So. at 80.

An intermediate court of appeals in Texas held that a transfer of stock in violation of a restriction gave the transferee both legal and equitable title to the stock, subject only to a first option restriction. *Mischer v. Burke,* 456 S.W.2d 550, 558 (Tex.Civ.App.—Houston [1st Dist.] 1970, writ ref'd n.r.e.). The stock certificate stated that the rights of the holder to sell, assign, or transfer were "subject to" the stock purchase option set forth in the by-laws, which provided that before selling his stock, a stockholder must notify the other stockholders holding an option to buy. *Id.* at 552.

The *Mischer* court examined much of the case law discussed above, and came to the conclusion that the transfer was "voidable" at the option of the court, and not inherently void. *Id.* at 555. The court distinguished the cases from other jurisdictions that found such transfers to be void, noting that in each of those cases, the suit was brought during the existence of the corporation. *Id.* at 556. Because the *Mischer* court found the dissolution of the corporation to be dispositive, its holding must be limited to those facts. In addition, the court did not explain its finding that the purchaser obtained both legal and equitable title "subject to" the first option restriction, nor did it cite any authority for that proposition. *Id.* at 558.

One case decided by the U.S. Court of Appeals for the Fifth Circuit, construing Louisiana law, held that a purported pledge of stock in violation of a valid stock restriction was voidable, not necessarily by the knowing parties to the transaction, but "by those to whom the duty created by the restriction ran: the corporation and other shareholders." *Adler v. Hill,* 981 F.2d 1474, 1488 (5th Cir.1993). The court therefore annulled the pledge.

On balance, these cases support this Court's conclusion that no legal or equitable title was transferred when Pass pledged his stock in violation of the stock restriction. Alternatively, even if title passed, the corporation and its shareholders retained the right to render the transfer void. The whole of the case law suggests that transfers in violation of a valid stock restriction are void and pass no interest to the recipient. The Delaware statute supports this conclusion.

### 2. The Intent Underlying Section 202

The Delaware legislature enacted title 8, section 202 of the Delaware Code to eliminate the uncertainty at common law surrounding stock restrictions and to validate many common stock restrictions. *St. Louis Union Trust Co. v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* 562 F.2d 1040, 1047 (8th Cir.1977); *see also Joseph E. Seagram & Sons, Inc. v. Conoco, Inc.,* 519 F.Supp. 506, 512 (D.Del.1981); Ernest L. Folk III et al., *Folk on the Delaware General Corporation Law: A Commentary and Analysis* § 202.1 (3d ed. 1992). Clearly section 202 was enact-

ed to ensure that courts enforce the valid stock restrictions enumerated in the statute, as well as "[a]ny other lawful restriction on transfer or registration of transfer of securities." Del.Code Ann. tit. 8, § 202(e). Indeed, Delaware's law on corporate stock restrictions is more permissive than that of any other state. *See Joseph E. Seagram & Sons, Inc.*, 519 F.Supp. at 512 (quoting Ernest Folk, *The Delaware General Corporation Law* 197–98 (1972)).

The stock restriction at issue states flatly that "NONE OF THE SHARES EVIDENCED BY THIS CERTIFICATE SHALL BE SOLD, TRANSFERRED, PLEDGED OR ASSIGNED WITHOUT THE PRIOR WRITTEN CONSENT OF THE COMPANY....'" This is a strict prohibition on the transfer of shares without the company's consent. The assignment by Pass to Metropolitan Bank directly violated this provision.

The Court concludes that such an unauthorized transfer was void and passed no interest at all to Metropolitan. Moreover, Metropolitan was not a bona fide purchaser because it had actual notice that such a transfer was prohibited. *See* Del.Code Ann. tit. 6, §§ 8–302, 8–303.

*E. The Merger of the Companies*

■ The plaintiff also claims that even if the Court finds that the stock restriction is valid, it became invalid once Distributive merged with TSSG to form ACTI. This argument is meritless. According to the plaintiff's allegations, the merger occurred on January 1, 1992, over two years after Pass pledged the stock to Metropolitan Bank on November 27, 1989. Because the transfer of stock was void when pledged, it could not take on new life because of a subsequent merger. In addition, the plaintiff's reliance on *Mischer v. Burke*, 456 S.W.2d 550, 553 (Tex.Civ.App.—Houston [1st Dist.] 1970, writ ref'd n.r.e.), discussed *supra*, and *United States v. Philadelphia National Bank*, 374 U.S. 321, 332 n. 7, 83 S.Ct. 1715, 1724 n. 7, 10 L.Ed.2d 915 (1963) is misplaced. As discussed above, *Mischer* involves the complete dissolution of a corporation, not a merger, and hence is inapplicable in this case. *Phila-*

*delphia National Bank* also has nothing to do with the case at hand. Thus, the plaintiff states no valid claim in this charge.

*F. Does the D'Oench, Duhme Doctrine Shield the Plaintiff as a Transferee of the FDIC?*

■ The plaintiff makes another claim that the *D'Oench, Duhme* doctrine applies in this case to protect the FDIC from the enforcement of unwritten, secret agreements that have the effect of undermining the goals of the FDIC. *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 461, 62 S.Ct. 676, 681, 86 L.Ed. 956 (1942). However, the *D'Oench, Duhme* doctrine does not apply because the stock restriction in question is not unwritten or secret; on the contrary, it is written conspicuously on the face of the stock certificates. Moreover, there is no suggestion in the evidence that any side agreement existed.

■ The plaintiff also cites *RSR Properties, Inc. v. FDIC*, 706 F.Supp. 524, 531 (W.D.Tex.1989), noting that the *D'Oench, Duhme* doctrine has been interpreted "to create an irrefutable presumption in favor of the FDIC that the documents in the records of the bank on the date of insolvency represent the true agreement between the parties." *Id.* This principle does not support the plaintiff's position. The bank's records included the stock certificates showing that the bank had no valid security interest in the stock pledged because of the express restriction on the certificates' face.

The plaintiff's reliance on 12 U.S.C. § 1823(e), which is the codification of the *D'Oench, Duhme* doctrine, is also misplaced. Section 1823(e) provides that "[n]o agreement which tends to diminish or defeat the interest of the [FDIC] in any *asset acquired by it* ... shall be valid against the Corporation" unless the agreement meets four requirements enumerated in the statute, including that the agreement be in writing. 12 U.S.C. § 1823(e)(1) (emphasis added).

The Court concludes that section 1823(e) does not apply in this case because the FDIC never actually acquired any asset. The pledge of the stock to Metropolitan Bank in

violation of the valid stock restriction did not transfer any interest and, thus, the FDIC acquired nothing. As Delaware law makes clear, the intangible interest in the security and the instrument representing that interest are not one and the same. *See* Del.Code Ann. tit. 6, § 8–102(1)(c). The FDIC may have acquired the paper, but it did not acquire the actual interest in the stock. Thus, section 1823(e) does not apply where the FDIC never actually acquired an interest in the asset. In addition, the stock restriction is not the kind of unwritten, secret side agreement that *D'Oench, Duhme* and section 1823(e) address.

### III. Conclusion

For the above-stated reasons, the Court finds that the plaintiff has failed to state a claim upon which relief may be granted. It appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Therefore, the Court grants the defendants' motion to dismiss the plaintiff's complaint.

It is so ORDERED.