WEBER v. LANE.

1. CORPORATIONS—STOCKHOLDERS' SUITS—CONSENT DECREE—TRANS-
FER OF STOCK.
    In suit between majority and minority stockholder interests in
        a corporation in which was entered a consent decree setting
        up a trusteeship of all of the stock of the corporation and
        authorizing the sale of either the stock or the corporate assets
        upon notice to the stockholders, such decree was binding upon
        the plaintiff stockholders hence a transfer of their stock to a
        transferee was contrary to the decree.

2. PARTIES—ASSIGNMENT OF INTEREST IN CONSENT DECREE—SUB-
STITUTION.
    Assignment of plaintiffs' interest in consent decree to a third
        party and substitution of assignee as party plaintiff upon the
        filing of the assignment in the cause was proper procedure
        (Court Rule No. 49 [1945]).

3. JUDGMENT—ASSIGNMENT OF INTEREST IN CONSENT DECREE.
    An assignment of plaintiffs' interests in a consent decree gave
        the assignee no other or further rights than were then pos-
        sessed by his assignors under their consent decree and where
        the assignment is a valid one the assignee succeeds to the rights
        of his assignors in accordance with and subject to the decree.

4. CORPORATIONS—STOCKHOLDERS' SUITS—CONSENT DECREE—CONFIR-
MATION OF SALE OF PHYSICAL ASSETS BY TRUSTEE.
    Where trustee of corporate property, who had been appointed
        pursuant to terms of consent decree in suit between majority
        and minority stockholder interests of domestic corporation, had
        not received any offers for purchase of the stock of the cor-
        poration for period of upwards of two years at price set in
        decree nor an equivalent offer for the physical assets, order
        confirming sale of physical assets to highest bidder at sale
        conducted fairly and in conformity with the provisions of the
        decree and the directions of the court was proper, hence
        minority interests were not entitled to preferential treatment

in respect to purchase of stock pursuant to a corporate bylaw affording stockholders or the corporation the first refusal of sale of a stockholder's stock.

5. SAME—STOCKHOLDERS' SUITS—CONSENT DECREE—BYLAWS—PREF-ERENCES.

·Where a consent decree has been entered in a suit between the majority and minority stockholder interests and provisions for the sale of the stock are incorporated in the decree, it controls over conflicting bylaw and agreement between the stockholders respecting preferential treatment in the disposal of stock, as the individual shareholders then retained merely an interest in the decree and had no stock upon which such agreement could operate.

6. SAME—RESTRICTIONS ON TRANSFER OF STOCK—STATEMENT ON CER-TIFICATES.

Order confirming sale of physical assets of corporation pursuant to decree entered in. controversy between majority and minority stockholder interests in the corporation will not be set aside on complaint of latter that they were not accorded preferential treatment in sale of stock pursuant to corporate bylaw where such restriction was not also stated upon the certificates as required by statute (2 Comp. Laws 1929, § 9534).

7. SAME—SALE OF PHYSICAL ASSETS—DISCRETION OF COURT.

Where amount received by trustee at sale .of physical assets of corporation was substantially in excess of the value of the stock and, at least, not less than the fair market value of the physical property of the corporation, the court did not abuse its discretion in refusing to reopen the sale.

Appeal from Wayne; Webster (Clyde I.), J. Submitted June 5, 1946. (Docket No. 42, Calendar No. 43,413). Decided October 7, 1946. Rehearing denied December 2, 1946.

Bill by Walter Weber and others against Ralph Lane and others to have defendants suspended as directors of Esquire Theatre Corporation, to have sale of stock declared subject to a voting trust agreement, and for appointment of receiver. Consent decree entered. Plaintiffs' interest in consent decree assigned to Michael J. Chargot who is sub-

stituted as plaintiff. Property of corporation sold to Michael J. Chargot. Petition by defendants to restrain Chargot from selling stock of corporation and to require him to turn over defendants' stock owned by him. Orders entered confirming sale and denying defendants' petitions. Defendants appeal. Affirmed.

*Fildew & Degree,* for plaintiff.

*Fischer, Brown, Sprague, Franklin & Ford* (*Leon R. Jones,* of counsel), for defendants.

*Cook, Baumann & Cook,* for trustee.

*Herbert W. Lane, in pro. per.,* on application for rehearing.

BOYLES, J. This is an appeal from an order entered in the circuit court for Wayne county in chancery confirming a sale of the physical property of the Esquire Theatre Corporation to one Michael J. Chargot. There is also a claim of appeal from the denial of several petitions filed by appellants in the same chancery case, seeking to compel said Michael J. Chargot to transfer stock of said corporation to the appellants. The question whether appellants must first obtain leave to appeal from an interlocutory order is not raised. The real parties in interest here, as will appear later, are Ralph Lane, Herbert W. Lane, Arthur Pancioli and Roger G. Dolphyn, as appellants, and Michael J. Chargot, as assignee of plaintiffs' interests in a decree, as appellee.

In 1938 the Esquire Theatre Corporation was organized. The corporation proceeded to erect a building in Detroit consisting of a motion picture theater, stores and offices. In April, 1941, friction which had arisen between majority and minority shareholder interests culminated in the majority

shareholders filing a bill of complaint against Herbert Lane, Ralph Lane, Arthur Pancioli, appellants herein, and Anthony Lubinsky. As finally amended, in January, 1943, the bill of complaint, among other things, sought the removal of the above-named appellants as officers and directors of the Esquire Theatre Corporation, the cancellation of certain shares of stock held by them, and the appointment of a receiver to take over the stock and the rights of the shareholders, take possession of the property of the corporation and liquidate the same. It was alleged that the above-mentioned defendants had fraudulently seized control of the corporation, fraudulently voted themselves stock, and had generally mismanaged the financial affairs of the corporation.

Issue was joined and the case heard on matters involving disputes as to the ownership of stock, the validity of a certain voting trust agreement, officer and director control of the corporation, claimed fraudulent issues of stock and misappropriation of corporate funds. An agreement was reached by the parties during trial, as a result of which a compromise or consent decree was entered on April 26, 1943. It provided for the appointment of the National Bank of Detroit as trustee, which appointment was declined, and the Bankers Trust Company, an appellee herein, was appointed trustee. The decree upheld the validity of a certain voting trust agreement, canceled certain shares of stock, directed certain stock certificates to be issued to the defendants, appellants herein, in full settlement of their respective claims to stock in the corporation, required the transfer to the trustee of all shares of stock of the corporation, transferred to the trustee all the rights and functions of the stockholders, and required the appellants herein to re-

sign their positions as officers and directors. The decree further authorized and directed the trustee to sell all of the stock at not less than par value ($1 per share), and provided that if such sale was not made within two years at par value or better the trustee should offer it for sale at the highest price obtainable, file a petition with the court setting forth the offers received, notice of hearing would be given to all stockholders, and the court would approve a sale or reject all offers. The decree further provided:

"If the trustee has an opportunity to sell *the assets* of said Esquire Theatre Corporation for a price which will net the same amount to the stockholders as if *the stock* had been sold, said trustee is hereby authorized to vote said stock in said corporation for the sale of said assets upon giving the same notice to stockholders and following the same procedure as to the approval of the court as though the said stock had been sold."

The decree then finally provided for the distribution of the proceeds among the shareholders after liquidation. No appeal was taken from this decree.

Notwithstanding the fact that by virtue of the decree all outstanding stock was transferred to the trustee and it became the owner thereof, and the only one who could transfer the stock, on April 9, 1945, the plaintiffs in the original bill of complaint, representing themselves to be "formerly stockholders in Esquire Theatre Corporation," entered into an agreement authorizing and directing "the undersigned voting trustees under a certain voting trust agreement dated December 23, 1940" to sell all the stock covered by said voting trust agreement to one M. J. Chargot, for 60 per cent. of par value. All of these alleged "former stockholders" were parties plaintiff in this chancery case in which the

said consent decree was entered. They are bound by the provisions of the decree, and the agreement to have *their "former" stock* assigned to Mr. Chargot by the former voting trustees was obviously contrary to its provisions. This is plainly apparent from an express provision in the decree "that the powers of the voting trustees, Andrew F. Musetti, Paul Romanowski and Leonard D. Slepski to vote and sell said stock is limited and modified by powers granted to the National Bank of Detroit herein."

However, these same plaintiffs also signed and filed in the cause an assignment to M. J. Chargot, from which we quote as follows:

"For valuable consideration, receipt of which is hereby acknowledged, the undersigned plaintiffs in the above entitled cause, by their voting trustees, Andrew F. Musetti, Leonard D. Slepski, and Paul Romanowski, *and individually,* hereby sell, assign, and transfer to M. J. Chargot all right, title and interest in and to the certain decree entered in the above cause on April 26, 1943 by the Honorable Clyde I. Webster, circuit judge, and as amended by supplemental decrees of May 28, 1943 and January 7, 1944, with full power and authority in the same M. J. Chargot to be substituted as assignee of the plaintiffs in said cause and to receive and retain all of the benefits due to the plaintiffs as former stockholders of the Esquire Theatre Corporation under the terms of said decree."

Upon this assignment being filed in the court and cause the court made an order substituting Mr. Chargot for said plaintiffs in the cause, giving him all their rights and benefits under the terms of the decree. This was proper. Court Rule No. 49 (1945). It is important to note here, that this assignment and the said order of the court is solely an assignment of the plaintiffs' interests in the decree, and

gives to Mr. Chargot no other or further rights than were then possessed by his assignors under their consent decree. The assignment of their interest in the decree was valid and binding, and thereupon M. J. Chargot succeeded to the rights of his assignors in accordance with and subject to the decree. *Brand* v. *Smith,* 99 Mich. 395; *Cyrowski* v. *Wojcik,* 280 Mich. 476, 483.

The appearance of Mr. Chargot was thereupon entered in the cause by the attorneys who until that time had represented Mr. Chargot's assignors in the case. This was followed by the filing of numerous petitions in the cause by the defendants, appellants herein, challenging the validity of the assignments and the order above referred to, claiming they were in violation of the terms of the decree. The petitioners asked the court to set aside the assignment of the plaintiffs' stock and their rights to Mr. Chargot and the order approving the same, also to decree that the defendants were the owners of the stock in question upon payment of 60 cents per share. Among other petitions, the defendants, appellants herein, asked the court to enjoin Mr. Chargot from selling any stock or any right of participation in Esquire Theatre Corporation. These petitions were denied by the court.

On July 26, 1945, the trustee filed a report of offers that had been made, both for the shares of stock and for the physical assets of the corporation. More than two years had elapsed since the decree had been entered, and the trustee reported that it had not received any offer to purchase the stock at par ($1 per share) or more. The trustee further reported: (1) An offer of $75,000 for the physical assets of the corporation, less the mortgage lien thereon; (2) an offer by defendants, appellants herein, of 60 cents per share for the stock; (3) an

offer by Mr. Chargot of $85,000 for the physical assets; and (4) an offer by Grandwood Investment Company of $95,000 cash for the physical assets, both of these offers (3 and 4) subject to the mortgage lien to be deducted from the purchase price.

Upon filing this report an order of hearing was made and notice given, according to the decree. At the hearing Mr. Chargot offered 70 cents per share for the stock, Herbert W. Lane (one of the appellants herein) offered 71 cents per share, a semblance of an auction seems to have been held in open court, offers for the physical property were made, and the court, after concluding that offers for stock could not be satisfactorily translated into cash bids for the physical property, announced:

"I think we should have a general bid from each party of a gross bid for the assets of the Esquire Theatre Corporation.

"Now, let's have each one make a bid that is a cash bid for the assets. I will later on determine what debts are to come out of it, and how much finally goes to the stockholders, and, of course, as you bring up, if a stockholder is the purchaser that can be arranged then, but not in the bid itself. Let's not have any bids so much a share, or so much after deducting, and so on. Let's have all bids so much cash for the assets.

"I may adjourn it again. All I am interested in is the largest amount for the stockholders. * * *

"I will adjourn this for two weeks, during which time anybody can made a bid, but that bid shall be sealed and it shall state the amount in cash that the bidder will pay for the assets of the Esquire Theatre Corporation."

When the hearing was resumed at the adjourned date, sealed offers were opened in court. Mr. Chargot offered $100,750, less the amount of the mortgage lien; Grandwood Investment Company offered

$106,500, also for title free from liens; and Herbert W. Lane offered $102,000, also free and clear of liens. These offers were for the physical property of the corporation. Counsel then started to make oral "bids" in open court, reaching $126,000 by Mr. Lane, and the court again adjourned the hearing in order that the interested parties might have further time to make final sealed bids which the court announced would be received as final. At such adjourned hearing Michael J. Chargot submitted the highest bid of $132,750 for the property of the corporation, which the court accepted. After some colloquy between counsel and court concerning stock taxes and income taxes, the court directed counsel for the trustee to prepare the order confirming the sale, and notice it for hearing. This was done and the sale of the physical property to Mr. Chargot was confirmed by order of the court at such hearing, on October 11, 1945. It is essential to note that these "bids," including those of appellants herein and the final highest bid of Chargot, as well as the order confirming the sale, were for the physical property of the corporation. The practice followed by the trustee and the court was in conformity with the provisions of the decree and within the discretion of the court and we see no merit in appellants' contention that the sale should have been merely for the outstanding stock of the corporation, not for the physical assets.

Counsel for Herbert W. Lane filed objections to the confirmation, mainly for the purpose of having the sale confirmed as a sale of the stock, rather than as a sale of the physical property of the corporation. The purpose of such objection obviously was to attempt to rely on a claim of right by Herbert W. Lane to preferential rights in the purchase of the stock, relying on the agreement made in 1940,

and an amendment to the bylaws of the corporation purporting to have been adopted April 25, 1940, to the effect that any shareholder must, before selling his stock, first offer it to the corporation or another shareholder. This would eliminate Mr. Chargot.

The agreement and bylaw relied upon by appellants purported to restrict shareholders in the sale of their stock, limiting it to the corporation or existing shareholders. However, the agreement and the bylaw must be read in connection with the decree, and the decree controls. The purpose of such an agreement was obviously to prevent control of the corporation from falling into different hands. The 1943 decree eliminated the necessity for these restrictions because control of the corporation was now completely vested in the trustee. Individual shareholders no longer held any stock, this was all held by the trustee. The shareholders retained merely an interest in the decree, and its provisions must control their rights. Not only was there no longer any reason for the continued existence of the 1940 agreement, but there also was no longer any subject-matter upon which that agreement could operate. No shareholder held any stock and consequently no shareholder could sell any stock even if he desired to do so. It is obvious, therefore, that after the 1943 decree was entered the 1940 agreement and the bylaw restricting the sale of stock to third persons were no longer enforceable according to their terms. The decree provides for a sale of either the stock or the physical property of the corporation, and does not limit the court merely to a sale of the stock. The acts of the trustee were at all times carried out in conformity with the decree, and the directions of the court. The sale of the physical property of the corporation was likewise in conformity with the decree, and the

order confirming such sale was entirely proper. The sale was fairly conducted, all interested parties given an opportunity to participate, and there was no abuse of discretion by the court.

The appellants in this court now seek to set aside the sale, relying on the same claims made in the circuit court and citing *Weiland* v. *Hogan,* 177 Mich. 626, in support thereof. The case has no force here, as against the decree entered in the circuit court. Furthermore, we do not find in this record any indication that any restriction in the bylaw against sale of stock was also stated upon the certificates of stock as required by 2 Comp. Laws 1929, § 9534 (Stat. Ann. § 19.345).

The court did not abuse its discretion in refusing to reopen the sale. The amount received was substantially in excess of the value of the stock, and at least not less than the fair market value of the physical property of the corporation. Other contentions of appellants are answered by the conclusions reached herein. Affirmed, with costs of both courts to appellees.

Butzel, C. J., and Carr, Bushnell, Sharpe, Reid, and North, JJ., concurred. Starr, J., took no part in the decision of this case.