**Walter M. MISCHER, Trustee, Appellant,**

v.

**Jack BURKE, Jr., et al., Appellees.**

**No. 15619.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

June 11, 1970.

Rehearing Denied July 16, 1970.

Urban, Coolidge, Pennington & Scott, Bryan W. Scott, Houston, for appellant.

John L. McConn, Jr., Howard L. Nations, Houston, for appellees; Butler, Binion, Rice, Cook & Knapp, Houston, of counsel.

PEDEN, Justice.

Suit brought by Walter Mischer, trustee, as payee, against Truett Peachey, the maker of a promissory note and against Westview Utilities, Inc., and its former directors on a purported assignment by Peachey of twenty-five shares of Westview stock. The defendants answered that the shares of stock gave notice of a stock purchase option set forth in section 19 of Westview's by-laws and that there had been no compliance with its provisions, so Mischer had acquired no title to the shares.

After a jury trial, Mischer has perfected this appeal from that part of a judgment declaring the purported transfer of the shares to be void and denying him relief from the defendants other than Peachey. Peachey did not seek any relief in this suit from the other defendants, and he did not appeal from Mischer's judgment against him. The directors of Westview when it was dissolved were Jack Burke, Jr., James N. Demaret, A. F. Thompson and Robert G. Williams. Mr. Thompson and Mr. Williams are deceased; Mr. Thompson's executor and Mr. Williams' personal representative were named as parties defendant along with Burke and Demaret.

Two stock certificates were involved. One was Stock Certificate No. 1 for twenty shares of capital stock of Westview issued to Truett Peachey and dated June 10, 1953. It had typed on it:

"NOTICE: The shares of capital stock in Westview Utilities, Inc. represented by the within stock certificate, and the rights of the holder thereof to sell, assign or transfer the same, are subject to the 'Stock Purchase Option' set forth in Section XIX of the By-Laws of Westview Utilities, Inc."

The other certificate bore number 6. It was for five shares and bore the date June 6, 1955. Typed on it was the same notice as appeared on Certificate Number 1 except that the word "assign" was omitted.

Section XIX of the by-laws of Westview was a "first option" provision:

"Should a stockholder desire to sell all, or any portion, of his capital stock in the corporation, he must notify all of the other stockholders of his intention in writing stating the number of shares offered for sale, and the price at which they are offered. Thereafter, all of the remaining stockholders shall have, and they are hereby given, the exclusive right and option to purchase said shares at the price at which they are offered for sale for and during a period of five (5) days after receipt of said written notice. In the event that more than one of the other or remaining stockholders desire to purchase the capital stock offered for sale, such stock shall be distributed equally among all of the stockholders exercising their option to purchase same. If none of the other or remaining stockholders exercise their option to purchase the stock offered for sale within five (5) days after the receipt of said written notice, then the stock may be sold to a third party or parties; provided, however, that said stock shall not be sold to anyone at a price lower than the price specified in the written notice offering said stock for sale to

the other or remaining stockholders of the company. This Company shall not be required to recognize a sale or transfer of its capital stock, and such sale shall not be binding on the Company, nor shall the transferee of such stock be entitled to vote the same at any stockholders meeting, unless such sale or transfer of capital stock is made after full compliance with the provisions of this Section of the By-Laws."

Peachey was one of the original directors and officers of Westview, but he was removed from both offices by the other directors in 1956.

On October 15, 1958 Peachey executed the promissory note in question in favor of Walter M. Mischer, Trustee, in the principal sum of $66,970. The note was given to secure payment of a debt that had arisen when Mischer had installed streets and water and sewer lines in a subdivision known as Spring Branch Woods Section 3, which was developed by Peachey alone. Williams, Burke and Demaret had participated as stockholders, directors and officers in corporations which had developed Spring Branch Woods Sections 1 and 2. The note recited that it was secured by an assignment of even date (on the "assignment" the date appears to have been changed from October 15, 1958 to November 15, 1958) from Peachey to Mischer, Trustee, transferring and assigning to the Trustee the twenty-five shares which we have described.

The stock certificates show that on November 15, 1958 they were sold, assigned and transferred by Peachey to Mischer, Trustee.

In response to Special Issues 1, 2 and 3 the jury found that prior to November 15, 1958 Peachey did not give actual notice to either Burke, Williams or Demaret, the other three men who were then stockholders in Westview, that he was going to assign his shares in Westview to Walter Mischer.

In response to Special Issues 5, 6 and 7 the jury declined to find that prior to November 15, 1958, either Burke, Williams or Demaret had waived his right under Section 19 of the by-laws to purchase the stock in question.

Mr. Mischer testified that after the loan from the Texas National Bank of Houston to Westview in the principal sum of $80,000. was paid by Westview, the bank turned the shares in question over to him. He also testified that Peachey defaulted on his note and that he gave Peachey credit for $37,500. for the stock and decided to have the certificates transferred into his own name as trustee. By letter dated February 17, 1960, Mr. Mischer's attorney advised Mr. Thompson as secretary of Westview of Mischer's election to have the stock in question transferred to his name on the books of the company and asked that such transfer be effected. Copies of letters introduced in evidence show that after Westview had been voluntarily dissolved, Mischer received an acknowledgment of receipt of such letter.

Westview's certificate of dissolution was filed in the office of the Secretary of State of Texas on August 10, 1960. Peachey gave his written consent as owner of the shares in question.

The appellant's first two points of error were presented together. They state that the trial court erred 1) in overruling the appellant's motion for instructed verdict and 2) in overruling his motion for judgment.

■ We consider, and the appellant does not contend otherwise, that the restriction on the disposition of the stock was valid, but we agree with the appellant's contention that it was inapplicable once the corporation was dissolved. He points out that the final accounting of Westview showed a credit to Peachey's account of $27,541.45 and in response to Special Issue No. 4 the jury found that on August 10, 1960, when the corporation was dissolved, Westview

owed Peachey that amount. The appellant cites Art. 1388, Vernon's Ann.Civil Statutes, which was in effect from 1919 until repealed in 1961. It provided:

"Upon the dissolution of a corporation, unless a receiver is appointed by some court of competent jurisdiction, the president and directors or managers of the affairs of the corporation at the time of its dissolution shall be trustees of the creditors and stockholders of such corporation, with power to settle the affairs, collect the outstanding debts, and divide the moneys and other property among the stockholders after paying the debts due and owing by such corporation at the time of its dissolution, as far as such money and property will enable them after paying all just and reasonable expenses; and for this purpose they may in the name of such corporation, sell, convey and transfer all real and personal property belonging to such company, collect all debts, compromise controversies, maintain or defend judicial proceedings, and exercise full power and authority of said company over such assets and property. Said trustees shall be severally responsible to the creditors and stockholders of such corporation to the extent of its property and effects that shall have come into their hands."

■ The restriction was a reasonable one. Citizens State Bank of Houston v. O'Leary, 140 Tex. 345, 167 S.W.2d 719 (1942). It met the requirements of the Texas statute then in effect, Art. 1358–15 (Uniform Stock Transfer Act):

"There shall be no lien in favor of a corporation upon the shares represented by a certificate issued by such corporation and there shall be no restriction upon the transfer of shares so represented by virtue of any by-laws of such corporation, or otherwise, unless the right of the corporation to such lien or the restriction is stated upon the certificate."

Provisions of the Texas Business Corporation Act of 1955 relating to the transfer of corporate shares are not applicable, because it was shown that Westview did not elect to come under that Act.

It is appellant's position that "even if the pledge agreement and foreclosure sale in question were not enforceable * * *", they would only be voidable, not void, so the appellant obtained rights which could be asserted after dissolution. The appellees contend that the trial court's judgment was correct in holding the purported transfer was void.

■ Generally speaking, corporate shares are property that may be freely sold and delivered, subject to reasonable restrictions which have been properly imposed. 14 Tex.Jur.2d 277, Corporations, § 155. Such restrictions are usually regarded with disfavor and are strictly construed. Casteel v. Gunning, 402 S.W.2d 529 (Tex.Civ.App.1966, writ ref., n. r. e.). Our policy does not favor restraints on the alienation of property. Citizens State Bank of Houston v. O'Leary, supra.

Restrictions on the sale of corporate stock of the nature here involved are considered reasonable because, as stated by Chief Justice Holmes, " * * * there seems to be no greater objection to retaining the right of choosing one's associates in a corporation than in a firm." Barrett v. King, 181 Mass. 476, 63 N.E. 934.

Upon dissolution of a corporation, however, there is no longer any reason to protect that right by a restriction on the alienability of the shares. The corporation no longer existed, its by-laws were no longer in effect and Art. 1388, noticed above, governed the distribution of its assets after its affairs had been settled.

■ The appellees do not seem to have sought rescission of the purported transfer or specific performance of the by-laws' provisions during the existence of the corporation. The dissolution of the corporation put an end to the transferable nature of the stock. It reduced a stockholder's interest to an equitable right to a distribu-

tive share of the corporate estate, a chose in action. 2 Hildebrand, Texas Corporations 124, § 343.

■ Although Westview, during its corporate existence, was not required under By-laws XIX to recognize the transfer of the shares of its capital stock to Mischer and he was not entitled to vote them, we find nothing in the by-law which states either directly or inferentially that the purported transfer was void.

We consider that it was only voidable. The restriction could have been waived. See Irwin v. Prestressed Structures, Inc., 420 S.W.2d 491 (Tex.Civ.App.1967, writ ref. n. r. e.); 18 Am.Jur.2d 902, Corporations, § 393; 12 Fletcher Cyclopedia of Private Corporations (12th ed.) 302, § 5453.

■ The appellant does not question the jury's findings that the restriction was not waived. But once the corporation was dissolved, the by-laws were no longer effective and the reason for honoring the restriction ceased to exist. We conclude that Mischer succeeded to whatever rights Peachey had to share in the distribution of the corporate assets after payment of its debts.

■ The facts in the instant case are unique. Texas cases and those from other jurisdictions are distinguishable on the facts but offer some assistance in their discussions of the principles involved. Many courts have held that the one who purports to buy shares whose alienability has been restricted does obtain some rights against the corporation or its assets. An attempted transfer in violation of a first option restriction operates as a transfer of the title as between the seller and purchaser even though it did not complete the purchaser's right to the benefits of a stockholder so far as the company was concerned. Star Mutual Telephone Company v. Longfellow, 85 Kan. 353, 116 P. 506 (1911).

Carpenter v. Dummit, 221 Ky. 67, 297 S.W. 695 (1927), was a declaratory judgment action brought by a co-operative association and one of its members against an assignee of his stock in the association's warehousing corporation; its by-laws provided that its stock should be issued only to members of the association. The court held that the restriction was a reasonable one and the assignee did not acquire legal title to the stock but that he does have a lien thereon for the amount paid by him for it, and the association having notice of the lien, will not deliver the stock certificates to the assignor until the lien has been satisfied.

In State v. Caddo Rock Drill Bit Co., 141 La. 353, 75 So. 78 (1917), the court held that the only effect of a first option restriction (which made no reference to the corporation's right to not recognize the sale, etc.) was to preserve to the other stockholders the privilege of purchasing the stock at any time during the stated option period. "It did not and could not have the effect of rendering the stock inalienable or of rendering a sale of it, without the prior notice of the intention to sell, absolutely null."

In Weber v. Lane, 315 Mich. 678, 24 N.W.2d 418 (1946), a shareholder sought to enforce a by-law which restricted the sale of a corporation's stock to the corporation or existing shareholders. The court held that the transaction involved was a sale of all the physical property of the corporation, not a sale of its stock, that an earlier decree had completely vested control of the corporation in a trustee and that the purpose of the restriction, to prevent control of the corporation from falling into different hands, had been eliminated. "Individual shareholders no longer held any stock, this was all held by the trustee. The shareholders retained merely an interest in the decree, and its provisions must control their rights. Not only was there no longer any reason for the continued existence of the 1940 agreement, but

there also was no longer any subject-matter upon which that agreement could operate. No shareholder held any stock and consequently no shareholder could sell any stock even if he desired to do so. It is obvious, therefore, that after the 1943 decree was entered the 1940 agreement and the by-laws restricting the sale of stock to third persons were no longer enforceable according to their terms."

■ In one case, however, it was held that a transfer in contravention of a first option provision was void. Sterling Loan & Investment Co. v. Litel, 75 Colo. 34, 223 P. 753 (1924). Or "prohibited". Monotype Composition Co. v. Kiernan, 319 Mass. 456, 66 N.E.2d 565 (1946). Or that the transferee did not receive *legal title* to the stock. Carpenter v. Dummit, supra. Or that a suit to have the transfer declared void was not demurrable. Bloomingdale v. Bloomingdale, 107 Misc. 646, 177 N.Y.S. 873, 911 (N.Y.Appel.Div.1919). We note that under the holding in Carpenter v. Dummit, supra, the transferee's equitable interest was preserved. In each of the other cases noticed in this paragraph, the cause of action was one brought during the existence of the corporation for the purpose of enforcing the rights of those stockholders who were entitled to the benefit of the restrictions and the courts' decisions nullified the transfers of stock, and did make them void. We do not think it necessarily follows that every purported transfer in violation of first option restrictions is void.

" 'The term "void" is equivocal. It may import absolutely null, or merely voidable. It is an indefinite expression that has no fixed meaning, and what is only "voidable" is often called "void." It is a common practice of Legislatures and courts to use the words "void" and "voidable" interchangeably, where the distinction between them is not material to the question or case under consideration.

" ' "Void" has with lexicographers a well-defined meaning as of no legal force or effect whatsoever, or null and incapable of confirmation or ratification. But it is sometimes and not infrequently used in enactments, in opinions, in contracts, and in arguments in the sense of voidable; that is capable of being avoided. The word "void," when used in any of these instruments, will therefore be construed in the one sense or the other as shall best effectuate the intent in its use, which will be determined from the whole language of the instrument and the manifest purpose it was framed to accomplish.' "

Southern National Insurance Co. of Austin v. Barr, 148 S.W. 845 (Tex.Civ.App.1912).

■ "That which is void is without vitality or legal effect. That which is voidable operates to accomplish the thing sought to be accomplished, until the fatal vice in the transaction has been judicially ascertained and declared." Slaughter v. Qualls, 139 Tex. 340, 162 S.W.2d 671 (1942); Smith v. Thornhill, 25 S.W.2d 597 (Tex.Com.App.1930). As we have stated, we think a judicial declaration which came after dissolution of the corporation was too late to deprive Mischer of whatever claim Peachey had to share in the distribution of its assets. We briefly state the reasons why we do not agree with the appellant's other two arguments under his first two points. His first is that he was entitled to prevail under the theory that Peachey had conveyed his interest in the corporation's assets after dissolution by oral assignment and that this theory was raised by Peachey's testimony that so far as he was concerned, Mischer was entitled to everything he (Peachey) had coming out of Westview.

■ Even if such testimony supported the theory of oral assignment, it was excluded by the trial court as to the appellees

and was admitted in evidence against Peachey alone, there were no pleadings to support a theory of oral assignment and the theory was waived in that no special issue submission of it was requested.

Nor do we agree with the appellant that the restriction itself is not valid or enforceable as against "the written pledge agreement in question," because such agreement amounts to only a pledge, mortgage or hypothecation of the shares, not a sale.

■ The instrument in question is the one dated November 15, 1958 which has been noticed above. It makes no reference to any pledge of the shares as collateral or to any right of foreclosure, but recites that it is given as payment or part payment of the debt represented by the promissory note. It does not show that Peachey retained any rights in the stock. It begins: "For Value Received, the undersigned does hereby SELL, ASSIGN and TRANSFER * * *" and its provisions show that it is a sale or transfer instead of a pledge. We hold that the transaction of November 15, 1958 was within the scope of the restrictions set out in By-law XIX and referred to by the notice typed on the stock certificates.

We sustain appellant's second point, so we do not reach his third one, which complained about the admission of evidence under the appellees' theory of estoppel.

Appellees' cross-point is that in the event the judgment of the trial court be reversed, this case should be remanded to the trial court for a new trial because the trial court erred in refusing the appellees' Special Issues A, B and C and their Instruction Number 1, relating to their theory of estoppel against the appellant and Peachey.

Appellees' tendered special issues and the instruction to which they refer were:

Special Issue No. A

"Do you find from a preponderance of the evidence that Truett Peachey has acted in a manner inconsistent with the said Truett Peachey now being allowed to rely on the separate entities of the corporations known as Brown, Burke & Demaret, Inc., Truett Peachey Development Company, Spring Branch-Woods, Inc., and Westview Utilities, Inc.

"Answer 'We do' or 'We do not'."

"If you have answered Special Issue No. A 'We do', and only in that event, then answer:

Special Issue No. B

"Do you find from a preponderance of the evidence that if Truett Peachey is now allowed to rely on the separate entities of the corporations known as Brown, Burke & Demaret, Inc., Truett Peachey Development Company, Spring Branch-Woods, Inc., and Westview Utilities, Inc., it will result in loss to the other stockholders, Jack Burke, Jr., James N. Demaret and Robert G. Williams, in said corporations?

"Answer 'We do' or 'We do not'."

"If you have answered Special Issue No. B 'We do', and only in that event, then answer:

Special Issue No. C

"Do you find from a preponderance of the evidence that it would result in unjust enrichment, as that term is herein defined, to Truett Peachey, if he were allowed to recover any sum from Westview Utilities, Inc., Jack Burke, Jr., James N. Demaret, the Estate of Robert G. Williams, or the Estate of Arthur Thompson?

"Answer 'We do' or 'We do not'."

Defendants' Requested Special
Instruction No. 1

" 'Unjust enrichment,' as that term is used in this charge, occurs when a person retains money or benefits which in justice and equity belong to another."

The trial court did submit, at the appellees' request, Special Issue No. 9; in re-

sponse to it the jury declined to find that Peachey had by his conduct treated the four corporations known as Brown-Burke-Demaret, Inc., Truett Peachey Development Company, Spring Branch Woods, Inc. and Westview Utilities, Inc. as one business.

The only assertion of estoppel contained in the answer on which the appellees proceeded to trial was: "Defendants would further show that the plaintiff is estopped to assert the claim against them alleged in this suit and by plaintiff's actions he has waived said claim."

■ We overrule the cross-point. Our principal reason is that the acts inquired about in the refused issues would not constitute an estoppel as to Mischer. As between Mischer and Peachey, Mischer obtained both legal and equitable title to the shares subject, of course, to the first option restriction. The shares were not burdened with any equitable remedies which might have been available to the corporation or its other stockholders against Peachey.

■ Upon dissolution of the corporation the interests of each of the stockholders became mere equitable rights to their several distributive shares of the corporate funds after payment of all debts and expenses. 2 Hildebrand, Tex.Corporations 124, § 343. The appellees were not entitled to offset against Mischer's distributive share any obligations Peachey might have previously incurred, because Mischer acquired the stock before the corporation was dissolved.

The judgment of the trial court is reversed and this cause is remanded with instructions that the judgment heretofore entered be amended to provide, in addition to the recovery already allowed of the appellant against defendant Peachey, that the appellant have judgment against appellees Jack Burke, Jr., James Demaret, and the estates of A. F. Thompson, deceased, and Robert G. Williams, deceased, jointly and severally for $27,541.45 plus interest on that sum from August 10, 1960 plus costs.