

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00229-CV

**TEXAS P.M.R., INC.** and John Ripley,
Appellants

v.

Robert **RIPLEY** and Mary Guzman,
Appellees

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2018-CI-23830
Honorable Aaron Haas, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Patricia O. Alvarez, Justice
Irene Rios, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: December 18, 2019

AFFIRMED

This interlocutory appeal involves a dispute among three siblings over the ownership of a Texas corporation, Appellant Texas P.M.R., Inc.  Appellants John Ripley and Texas PMR sued appellees Robert Ripley and Mary Guzman seeking declarations that John is Texas PMR's sole shareholder and that Robert and Mary do not own any shares in that company.  They also seek to enjoin any purported officers or directors of the corporation from taking certain specified actions. Texas PMR and John appeal from the denial of their request for a temporary injunction.  We affirm.

BACKGROUND

John, Robert, and Mary are the three children of Patricia Ripley, who died intestate in February 2008. Robert and Mary filed an heirship proceeding in 2018, which resulted in a judgment that John, Robert, and Mary are Patricia's heirs and that each owns one-third of her estate. The heirship judgment does not make any determination concerning the contents of that estate. The fundamental disputes in this case are whether Patricia owned 1,000 shares in Texas PMR at the time of her death, and whether those 1,000 shares constitute all the outstanding shares in the corporation.

## A.      Events Occurring Prior to Patricia's Death

Texas PMR has a rather convoluted history.

### 1.      *Origin of P.M.R., Incorporated*

In October 1988, the company was incorporated as P.M.R., Incorporated. According to its Articles of Incorporation (AOI), it was authorized to issue 1,000 shares of common stock with a par value of one dollar per share. The AOI also state that the initial board of directors consisted of one director: John. But the minutes of the December 31, 1988 organizational meeting of the board of directors identify three directors—Robert, Patricia, and John. Those minutes also reflect that the directors approved and adopted bylaws for the corporation, and that those bylaws contain provisions for calling shareholder meetings and conducting company business. The first shareholder meeting was also held on December 31, 1988, and that meeting's minutes state that resolutions were adopted ratifying the election of directors and the adoption of the bylaws. The bylaws themselves do not appear in our record and John denies that any bylaws were ever adopted.

The minutes of the December 31, 1988 organizational meeting also show that John was named president and secretary of the company, and that the board accepted the following offer to purchase the company's shares:

| Name | Payment Consideration, or Property | Number of Shares |
|---|---|---|
| PATRICIA R'pley FOR PMR LTD. (A BAHAMAS INC. COMPANY IN PROCESS OF INCORPORATION) | $1000 AND RENTAL HOUSES | 1000 |

On that same day, Stock Certificate 1 was issued certifying that "Patricia Ripley (for PMR LTD) is the registered holder of one thousand shares in P.M.R. Inc."

*2.      PMR Limited (Limited-1)*

In March 1989, a company named PMR LIMITED (Limited-1) was created in the Bahamas.  There is evidence that the company was never funded, never transacted any business, and never issued any shares.  It ultimately ceased to exist for failing to pay franchise taxes.

*3.      P.M.R. Incorporated Becomes Texas P.M.R., Incorporated*

On September 26, 1991, John signed an amendment to the AOI as president and secretary of P.M.R., Incorporated.  The amendment changed the name of the company to Texas P.M.R. Incorporated and reaffirmed that only 1,000 shares had been issued and were entitled to vote.  It further stated that "[t]he holders of all the shares outstanding and entitled to vote on said amendment have signed a consent in writing adopting said amendment."  Consistent with this statement, appended to the amendment is a statement signed by Patricia on September 10, 1991, which reads, "I Patricia Ripley give my consent to change the name of P.M.R. Incorporated to Texas P.M.R. Incorporated."

*4.      P.M.R. Limited (Limited-2)*

In December 1994, John caused a second company, P.M.R. Limited (Limited-2) to be created in the Bahamas. That company was struck off the Companies Register of the Bahamas in December 1998 for nonpayment of fees.

### 5.    *February 1999 Texas PMR Events*

Minutes of a February 3, 1999 Texas P.M.R., Incorporated (Texas PMR) board meeting, which was attended by John and Patricia as directors, state that the board unanimously agreed to issue 4,000 shares to John in consideration of funds advanced by the HA Ripley Trust, which were debited from John's inheritance, and properties transferred to the corporation by John.[1]

The February 3, 1999 Texas PMR board meeting minutes also state that the 1,000 shares previously issued to "Patricia Ripley/PMR Limited" are confirmed to be PMR Limited shares. But no iteration of PMR Limited existed on February 3, 1999, because both Limited-1 and Limited-2 were defunct.

On February 4, 1999, Stock Certificate 3 was issued reflecting that John owns 4,000 shares in Texas PMR.[2] The following day, a certificate was issued indicating that the bearer owns 1,000 shares in PMR Limited, even though no such entity existed. This certificate is, and has always been, in John's possession.

The purpose of this series of events was to divest Patricia of any ownership in the original 1,000 shares, place ownership of those shares in John through his possession of the bearer shares in PMR Limited, and grant an additional 4,000 shares to John. The intended result was for Texas PMR to have 5,000 shares outstanding, all owned by John. Robert and Mary contest the validity of each of the February 1999 transactions.

---

[1] John acknowledged at the temporary injunction hearing, though, that he was compelled to convey those properties under a 1991 divorce decree. Some of the properties were found by the divorce court to be held by John and his wife in constructive trust for the company, some were confirmed as belonging to the company, and some were conveyed in settlement of the company's affirmative claims against John and his wife.

[2] A contemporaneous stock ledger indicates that Stock Certificate 2 replaced Stock Certificate 1, but our record does not contain Stock Certificate 2 or any explanation of the circumstances under which it was issued.

**B.     Events Occurring After Patricia's Death**

After Patricia died in February 2008, John continued to run Texas PMR, whose business is the operation and management of certain real properties in Texas.

*1.     Robert and Mary's Demand Letter*

On September 8, 2017, Robert and Mary sent John a demand letter stating that they had become aware that John was claiming sole ownership of Texas PMR. Robert and Mary asserted that Patricia's shares had passed to her children and, consequently, the three siblings were equal share owners. They demanded that John (1) either resign as an officer and director of the company or be removed, (2) allow Robert and Mary to examine the company's books, and (3) voluntarily agree that each sibling owns one-third of the company.

*2.     PMR Ltd. (Limited-3)*

Approximately two weeks after receiving this demand letter, John caused a third Bahamian company, PMR LTD. (Limited-3), to be created. Four days later, he sued Robert and Mary, seeking a declaration that he is the sole owner and shareholder of Texas PMR. John later nonsuited this declaratory judgment action while Robert's no-evidence motion for summary judgment was under advisement by the court.

*3.     May 2018 Texas PMR Board Meeting*

In April 2018, John noticed a special meeting of Texas PMR's board of directors, to occur in May 2018. The notice is addressed to "shareholders," but does not indicate specifically to whom it was sent. John testified that he believed his attorney sent the notice to Robert and Mary,[3] but

[3] John appends to his reply brief an e-mail exchange between the attorneys in this case concerning the May 2018 meeting. Those e-mails were not before the trial court and will not be considered by this court. *See Martin v. Bravenec*, No. 04-14-00483-CV, 2015 WL 2255139, at *5 n.5 (Tex. App.—San Antonio May 13, 2015, pet. denied) (mem. op.) ("This court may not consider matters outside the appellate record.").

Robert denied having received any such notice.[4] In any event, only John, his attorney, and John's companion were present for the May 2018 special meeting. As a result of that meeting, John passed several corporate resolutions, including resolutions that purported to do the following:

- declare that any previous board consisting of anyone other than John was illegally constituted and had no authority to act;

- increase the number of shares the company is authorized to issue from 1,000 to 5,000;

- declare that no offer had been made to purchase the shares purportedly issued to Patricia in December 1988;

- cancel the 1,000 shares issued to Patricia;

- ratify the 4,000 shares issued to John in February 1999; and

- declare that the corporation never had any bylaws.

John then filed with the Texas Secretary of State a "Resolution Relating to a Series of Shares," attempting to increase the number of Texas PMR's authorized shares from 1,000 to 5,000. The Secretary of State rejected that filing.

### 4. Application for Heirship

In June 2018, Robert and Mary filed an application for heirship in probate court. They sought to establish that (1) John, Robert, and Mary were Patricia's heirs; (2) Patricia was the sole shareholder of Texas PMR, owning 1,000 shares at the time of her death; and (3) each heir should be awarded one-third of those shares. During the pendency of that suit, John filed with the Secretary of State an amendment to the AOI, again attempting to increase the number of Texas PMR's authorized shares.

### 5. Heirship Determination, Appeal

In its December 10, 2018 judgment, the trial court determined that Robert, John, and Mary were Patricia's heirs and that each was entitled to one-third of Patricia's estate. However, the court

---

[4] Mary did not appear or testify at the temporary injunction hearing.

did not reach the issue of Patricia's ownership of Texas PMR shares because of time constraints resulting from the judge's scheduled departure from the bench at the end of the year. Robert and Mary nonsuited their declaratory judgment action on the ownership issue. John appealed the heirship judgment, which this court affirmed. *Estate of Ripley*, No. 04-18-00968-CV, 2019 WL 4179128 (Tex. App.—San Antonio Sept. 4, 2019, no pet. h.).

  *6.  Declaratory Relief, Injunction Suit*

Appellants filed the present action on December 20, 2018. John seeks the following declarations: Robert and Mary do not own any shares in Texas PMR and have no rights as shareholders; John is the sole shareholder of Texas PMR; the company properly canceled Patricia's shares; and the company properly ratified the 4,000 shares issued to John. Appellants also requested an injunction enjoining Robert and Mary from convening any shareholders' or directors' meetings; purporting to make any decisions on behalf of Texas PMR; attempting to oust John from his positions as officer, director, and shareholder; and interfering with the business of Texas PMR.[5]

  *7.  February 2019 Texas PMR board meeting*

On February 8, 2019, Robert and Mary issued a notice of special shareholders meeting for Texas PMR, to take place on February 21, 2019. Appellants sought a temporary restraining order to prevent this meeting, but their request was denied and the special shareholders' meeting was held as scheduled. At that meeting, which John attended, Robert and Mary elected themselves to the board of directors.

  *8.  Amended Petition*

Appellants then amended their petition in this case, restating their request for declaratory relief and replacing his previously-requested injunction with a request to enjoin "any purported

---

[5] Robert and Mary filed counterclaims against Appellants including, among others, claims for fraud, breach of fiduciary duty, and conversion. Those counterclaims are not at issue in this appeal.

officers and directors of Texas PMR" from taking certain actions, such as adding or removing officers or directors, and issuing or buying back any shares. Appellants further pleaded for a temporary injunction enjoining Robert and Mary from causing the company to take these same actions without the unanimous agreement of the parties or a court order.

### 9. Trial Court's Order

The trial court heard Appellants' application for a temporary injunction on two separate dates in March and April 2019. On April 9, 2019, the court signed an order denying the application and reciting specific findings of fact and conclusions of law. Among these are findings and conclusions that Patricia owned all 1,000 shares of Texas PMR at the time of her death, her shares vested equally in John, Robert, and Mary at that time, and John's attempts to issue himself additional shares are void. This appeal followed.

### ISSUES ON APPEAL

In three issues, Appellants argue the trial court erred in denying their application for a temporary injunction. First, the trial court applied the wrong status quo in deciding Appellants' application. Second, Appellants showed a probable right to the relief sought. Third, Appellants will suffer an irreparable injury for which there is no adequate remedy at law.

Because Appellants' first issue is resolved by our disposition of the second and third issues, we will address Appellants' first issue last. Before we address the issues, we briefly relate the standard of review and the applicable law for an application for a temporary injunction.

### STANDARD OF REVIEW

"We review a trial court's order [on a request for] a temporary injunction for clear abuse of discretion." *Henry v. Cox*, 520 S.W.3d 28, 33 (Tex. 2017). "[We] will not disturb the order unless it is 'so arbitrary that it exceed[s] the bounds of reasonable discretion.'" *Id.* (second alteration in original) (quoting *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002)).

Further, "we must 'draw all reasonable inferences from the evidence in a manner most favorable to the trial court's judgment.' The trial court does not abuse its discretion when it bases its decision regarding the existence of a probable right and irreparable injury on conflicting evidence in the record." *Zuniga v. Wooster Ladder Co*., 119 S.W.3d 856, 861 (Tex. App.—San Antonio 2003, no pet.) (en banc) (citation omitted) (quoting *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978)).

## TEMPORARY INJUNCTION

The purpose of a temporary injunction is to preserve the status quo pending a trial on the merits. *Butnaru*, 84 S.W.3d at 204. "The status quo is 'the last, actual, peaceable, non-contested status which preceded the pending controversy.'" *Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 555 (Tex. 2016) (quoting *In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004)); *accord Metra United Escalante, L.P. v. Lynd Co*., 158 S.W.3d 535, 544 (Tex. App.—San Antonio 2004, no pet.).

The applicant for a temporary injunction has the burden to plead and prove "(1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim." *Butnaru*, 84 S.W.3d at 204; *accord Khaledi v. H.K. Global Trading, Ltd*., 126 S.W.3d 273, 280 (Tex. App.—San Antonio 2003, no pet.). "An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard." *Butnaru*, 84 S.W.3d at 204.

## PROBABLE RIGHT TO RECOVER

In their second issue, Appellants contend that they established a probable right to recover on their claim that Robert and Mary are not entitled to any shares in Texas PMR, either because Patricia did not own any shares at the time of her death, or because her shares were not offered to the corporation prior to their transfer by intestacy, pursuant to a transfer restriction contained in the AOI. We address Patricia's ownership of the 1,000 shares first.

## A.     Patricia's Ownership of 1,000 Shares

Robert and Mary each claim ownership of one-third of 1,000 shares by virtue of intestate succession from their mother, Patricia.  They assert that John owns the remaining one-third, also as Patricia's heir.  John, on the other hand, claims sole ownership of Texas PMR's shares based on his contention that Patricia did not own any shares at the time of her death.  Appellants assert that the shares originally issued to her were actually owned by PMR Ltd. and that, because John possesses 1,000 bearer shares in PMR Ltd. (ostensibly being all of that entity's shares), he therefore owns all of the original 1,000 shares in Texas PMR.  Appellants also assert that John owns 4,000 additional shares that were issued to him in 1999.  Those shares will be discussed separately below.

The critical inquiry centers on the evidence of what Patricia owned at the time of her death in 2008.  Whatever Patricia owned at her death immediately vested in her heirs at law—John, Robert, and Mary.  *See* Act of June 1, 1981, 67th Leg., R.S., ch. 674, § 3, 1981 Tex. Gen. Laws 2536, 2537 (updated version codified at TEX. EST. CODE ANN. § 101.001) ("[W]henever a person dies intestate, all of his estate shall vest immediately in his heirs at law.").[6]  Thus, if Patricia owned 1,000 shares in Texas PMR at the time of her death, one-third of those shares vested in each sibling immediately upon her death.  *See id.*  We reject, as contrary to the express terms of the statute, Appellants' contention that ownership of shares does not vest in Robert and Mary unless and until they obtain a court order declaring it to be so.[7]

There was ample evidence before the trial court supporting Robert and Mary's position that Patricia owned 1,000 shares in Texas PMR at the time of her death.  In December 1988, 1,000 shares were issued to Patricia (for PMR Ltd.), but no entity named PMR Ltd. existed at that time.

---

[6] At the time of Patricia's death in 2008, intestate succession was governed by section 37 of the Texas Probate Code. The former Probate Code section 37 is now codified as section 101.001 of the Estates Code.

[7] We also note that, if a court order were required to vest ownership of Patricia's shares in her children, then that requirement would apply equally to John.

Even after Limited-1 was created in 1989, it never issued any shares, was not funded, and ultimately ceased to exist. Further, although Limited-2 was later created, it, too, ceased to exist prior to Patricia's death. There is evidence that, in 1999, John attempted to claim ownership of the shares issued to Patricia by professing to issue and possess 1,000 shares of bearer stock in PMR Ltd. That attempt fails, though, because no PMR Ltd. entity existed in 1999.

In addition, the trial court was entitled to consider evidence that John formed a third PMR Ltd. entity, well after Patricia's death and after the controversy between the parties arose, as an attempt by John to deceive his siblings. The court could infer from this attempted deception that John implicitly recognized that his mother owned the 1,000 shares at the time of her death and was trying to avoid the consequences of that ownership (i.e., splitting the shares with his siblings).

The trial court did not clearly abuse its discretion by concluding that John failed to establish a probable right to relief on his claim that Patricia did not own 1,000 shares in Texas PMR at the time of her death.

**B.      Effect of the AOI Transfer Restriction**

Appellants additionally argue that, even if Patricia owned 1,000 shares at the time of her death, Robert and Mary never acquired any portion of those shares because the AOI contain a restriction on the transfer of shares.

*1.      Shares Transfer Restriction*

Specifically, the AOI require that, before a shareholder may transfer any shares, those shares must first be offered to the corporation at their net book value and then, if the corporation does not timely accept the offer, to the other shareholders. If neither the corporation nor the other shareholders timely accept the offer, the shareholder may dispose of the shares as she desires. The AOI state that this provision applies to any transfer, through operation of law or otherwise, including transfers by will or intestacy. Texas law recognizes the validity of such restrictions, *see*

TEX. BUS. ORGS. CODE ANN. § 21.211 (Valid Restrictions on Transfer), but they are viewed with disfavor. *Earthman's, Inc. v. Earthman*, 526 S.W.2d 192, 202 (Tex. App.—Houston [1st Dist.] 1975, no writ).

### 2. *No Offer to Corporation*

Patricia's shares were not offered to the corporation by Patricia's estate because there was no administration of that estate and, thus, no administrator to make such an offer. Appellants contend that, because of this failure, Robert and Mary never received any of Patricia's shares. Appellants argue, in essence, that the intestate transfer is void. Robert and Mary counter that it was John's responsibility, as sole director and officer of Texas PMR, to offer the shares to the company and that, because he did not do so, the restriction on transfer is waived. They do not, however, cite any authority to support that contention.

Appellants likewise do not cite any authority holding that a transfer of shares in violation of a restriction such as that contained in the AOI renders the transfer void. In fact, one case on which Appellants rely expressly holds that such a transfer is not void, but merely voidable, because the restriction may be waived. *See Mischer v. Burke*, 456 S.W.2d 550, 555 (Tex. App.—Houston [1st Dist.] 1970, writ ref'd n.r.e.).

Appellants next contend that, even if Robert and Mary acquired an interest in Patricia's shares upon her death, they nonetheless cannot participate as shareholders until they offer their shares back to the corporation. But, again, if Robert and Mary cannot participate as shareholders, then neither can John. This leads again to the absurd result that the corporation, in effect, has no shareholders.

### 3. *Construction to Avoid Absurd Results*

"[U]nder general rules of construction we avoid strictly construing an instrument's language if it would lead to absurd results." *Kourosh Hemyari v. Stephens*, 355 S.W.3d 623, 626–

27 (Tex. 2011) (citing *Transcon. Ins. Co. v. Crump*, 330 S.W.3d 211, 227 (Tex. 2010)). This principle is particularly applicable here because of the unique circumstances presented—the intestate death of a corporation's sole shareholder[8] with no estate administration. If the intestate transfer of shares to Robert and Mary is void because of a failure to comply with the AOI transfer restriction, then the intestate transfer of shares to John is likewise void. This construction of the AOI leads to the absurd result that Texas PMR has no shareholders at all.

### 4. *Avoid Assets Belonging to No One*

Appellants' application of the transfer restriction is also flawed because it results in Patricia's heirs receiving none of her estate (it being undisputed that Patricia had no assets other than the 1,000 shares), contrary to the laws of descent and distribution. *See* TEX. EST. CODE ANN. § 201.001 (providing that the estate of decedent without a spouse passes to the children); *Trial v. Dragon*, No. 18-0203, 2019 WL 2554130, at *6 (Tex. June 21, 2019). A companion result is that the estate assets belong to no one. This is not only absurd but violates the principle that "title to an estate vests in the heirs immediately upon the death of the decedent. There is never a time when title is not vested in someone." *Welder v. Hitchcock*, 617 S.W.2d 294, 297 (Tex. App.—Corpus Christi 1981, writ ref'd n.r.e.); *see* TEX. EST. CODE ANN. § 101.001.[9]

### 5. *Trial Court's Construction Reasonable*

Because courts must avoid construing instruments in a manner that leads to an absurd result, *see Kourosh*, 355 S.W.3d at 626, and because restrictions on the transfer of shares are disfavored, *see Earthman's*, 526 S.W.2d at 202, the trial court could properly refuse to construe

---

[8] Appellants' contention that John owns an additional 4,000 shares in Texas PMR is addressed below.

[9] Appellants' reliance on section 111.052 of the Estates Code to avoid the application of section 101.001 is misplaced. Section 111.052 merely recognizes that provisions in certain instruments such as insurance policies and retirement plans stating that money or benefits pass to a designated person upon death are not invalidated by the Estates Code. Section 111.052 has no application to the present situation because the AOI do not provide that corporate shares pass to the corporation upon the death of a shareholder.

the AOI transfer restriction in a manner that summarily deprives rightful heirs of their inheritance, contravenes long-standing principles of intestate succession, and leaves a corporation devoid of shareholders. These results are avoided by construing the AOI such that transfers in violation of the transfer restriction are voidable rather than void.[10] *See Mischer*, 456 S.W.2d at 555. Under this construction, the failure to offer Patricia's shares in Texas PMR to the corporation did not prevent those shares from vesting in her three children immediately upon her death. *See* TEX. EST. CODE ANN. § 101.001; *Welder*, 617 S.W.2d at 297.

### 6.    Right to Choose Associates

Appellants note that "[r]estrictions on the sale of corporate stock of the nature here involved are considered reasonable because, as stated by Chief Justice Holmes, '. . . there seems to be no greater objection to retaining the right of choosing one's associates in a corporation than in a firm.'" *Mischer*, 456 S.W.2d at 554 (second alteration in original) (quoting *Barrett v. King*, 63 N.E. 934, 935 (Mass. 1902)). Given this rationale for restricting the transfer of corporate shares, it would appear to be the shareholders who have the right to choose their associates by either ratifying a transfer made in violation of the restriction or exercising the corporation's option to purchase the transferred shares.

There is evidence in this case supporting the trial court's conclusion that John, Robert, and Mary are Texas PMR's only shareholders. It is their prerogative to choose their associates by determining whether to ratify the intestate transfers. *See id.* Appellants' argument that the siblings cannot act as shareholders until the intestate transfers are ratified would leave the corporation and the siblings in eternal limbo—the ratification would have to be accomplished by the corporation's

---

[10] Further support for this construction lies in the fact that the AOI transfer restriction merely gives the corporation the opportunity to *purchase* the subject shares; it does not give the corporation the right to simply veto a proposed transfer.

shareholders, but there would be no shareholders authorized to act. It was within the trial court's discretion to reject this argument as again leading to an absurd result.

The trial court did not clearly abuse its discretion by concluding that John failed to establish a probable right to recover on his request for declarations that he is Texas PMR's sole shareholder, Robert and Mary do not own any shares in Texas PMR, and Robert and Mary have no rights as shareholders. *See Kourosh Hemyari*, 355 S.W.3d at 626–27.

## C. John's Ownership of Additional Shares

Appellants also seek a declaration that Texas PMR properly ratified the issuance of 4,000 shares to John, which would make John a majority shareholder even if Robert and Mary acquired some of Patricia's 1,000 shares. Appellants did not present any argument in their opening brief challenging the denial of a temporary injunction based on this requested declaration, but they purport to do so in their reply brief.

An issue raised for the first time in a reply brief is waived. *City of Helotes v. Cont'l Homes of Tex., LP*, No. 04-15-00571-CV, 2016 WL 3085924, at *5 (Tex. App.—San Antonio June 1, 2016, no pet.) (mem. op.) (citing *Anderson Prod. Inc. v. Koch Oil Co.*, 929 S.W.2d 416, 424 (Tex. 1996)). Nevertheless, we will address Appellants' contention that John owns an additional 4,000 shares in Texas PMR because it bears on our analysis concerning the effect of the AOI transfer restriction.

### 1. *Additional Shares Not Authorized*

Texas PMR's AOI state that Texas PMR is authorized to issue 1,000 shares of common stock. The records of the Texas Secretary of State do not reflect that the AOI were ever effectively amended to authorize the issuance of additional shares. John's first attempt to obtain additional shares in the corporation occurred in 1999, when he issued 4,000 shares to himself. But the corporation was not authorized to issue more than the 1,000 shares that were already outstanding.

## 2.    *Failure of Consideration*

In addition, there is evidence from which the trial court could conclude that the consideration John purportedly paid for the additional 4,000 shares failed because it consisted of property that he was required by court order to convey to Texas PMR, either because it was already owned by the company, was held in constructive trust for the company, or was payment in settlement of the company's claims against John and his then-wife.

## 3.    *Failed Validation Attempts*

John next attempted to validate his issuance of 4,000 additional shares in May 2018 by filing a resolution with the Secretary of State purporting to increase the number of authorized shares. But, as John himself testified, the Secretary of State rejected that filing.[11] Three months later, in August 2018, John filed a certificate of amendment again attempting to unilaterally increase the number of Texas PMR's authorized shares from 1,000 to 5,000. But, as Robert and Mary point out, because there was no proper corporate resolution authorizing this increase, amending the AOI to accomplish such an increase would require shareholder approval. *See* TEX. BUS. ORGS. CODE ANN. § 21.364(d)(1) (requiring shareholder approval to increase or decrease shares in a class or series unless the board of directors adopts a resolution under section 21.155).

These 2018 attempts to increase Texas PMR's authorized shares were made while litigation between John and his siblings was pending. The trial court could infer from the timing and circumstances of these efforts that John was using his position as officer and director of the corporation to dilute Robert and Mary's ownership interest for his own benefit. This, in turn, raises

---

[11] Appellants argue in their reply brief that the additional 4,000 shares may be ratified under "Subchapter R of the Texas Business Organizations Code." But, as John himself testified, this is precisely what he attempted to do in May 2018, and the Secretary of State rejected it.

significant questions concerning the validity of those efforts and whether there is a probability that John will prevail on the merits of his claim that he owns an additional 4,000 shares in Texas PMR.

The trial court did not commit a clear abuse of discretion by concluding that John failed to establish a probable right to recover on his request for a declaration that Texas PMR effectively ratified the issuance of 4,000 shares to him.

**D.      No Probable Right to Recover**

Appellants failed to establish a probable right to recover on any of their claims for declaratory judgment. This failure alone is sufficient to affirm the trial court's decision to deny Appellants' request for a temporary injunction. We overrule Appellants' second issue.

Nevertheless, we will alternatively address the element of irreparable injury, as that element also supports the trial court's decision.

**IRREPARABLE INJURY**

In their third issue, Appellants contend that they established that John and Texas PMR will suffer irreparable injury if the requested temporary injunction is not granted. An irreparable injury is one for which "the injured party cannot be adequately compensated in damages or [for which] damages cannot be measured by any certain pecuniary standard." *Butnaru*, 84 S.W.3d at 204.

The irreparable injury Appellants asserted at the temporary injunction hearing is that Texas PMR will face "ruination" because Robert (a Canadian citizen) does not have the proper immigration status and neither Robert nor Mary has the experience or qualifications to manage the company's operations. Robert testified, however, that he intends to hire professional managers, which the trial court could properly find alleviates the concern over Robert's and Mary's personal management abilities.

The only other evidence Appellants presented on the subject of irreparable harm was John's testimony that he has managed the company for thirty years.[12] His assertion of harm if he is replaced in this management role is based on his concerns about Robert's and Mary's abilities, which we have addressed above. Insofar as Appellants assert that *any* change in management after thirty years will be harmful to the company, there is no evidence to support that blanket assertion. Finally, insofar as Appellants contend John will personally be harmed if he is replaced as company manager, there is no evidence that he could not be adequately compensated in damages for any such harm. *See Butnaru*, 84 S.W.3d at 204.

The trial court did not clearly abuse its discretion by concluding that Appellants failed to establish any irreparable injury if the requested temporary injunction were not granted. We overrule Appellants' third issue.

### PRESERVATION OF THE STATUS QUO

In their first issue, Appellants contend that denying their request for a temporary injunction disrupts the status quo, which Appellants define as the parties disputing the ownership of shares in Texas PMR. Appellants do not explain how the parties being in dispute is the last *peaceable, non-contested* status preceding the pending controversy. *See Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 555 (Tex. 2016); *Metra United Escalante, L.P. v. Lynd Co.*, 158 S.W.3d 535, 544 (Tex. App.—San Antonio 2004, no pet.). On the contrary, who owns shares in Texas PMR *is* the pending controversy.

Robert and Mary do not address the issue of what constitutes the status quo. It appears from the record that it may well be the circumstances that existed immediately prior to John's 1999

---

[12] In their brief, Appellants cite several events that "on information and belief" occurred after the trial court denied their temporary injunction request. These events are not in the appellate record, and we will not consider them. *See Martin*, 2015 WL 2255139, at *5 n.5.

attempt to issue 4,000 shares in Texas PMR to himself, declare that the 1,000 shares issued to Patricia were actually owned by PMR Ltd., and create and possess 1,000 bearer shares in a non-existent Bahamian company called PMR Ltd. Immediately prior to those events, John was a director and officer of Texas PMR, but not a shareholder. Robert and Mary were likewise not shareholders. Patricia alone owned shares in Texas PMR. And while her shares were ostensibly issued to her "for PMR Ltd.," no such company existed, Limited-1 and Limited-2 having ceased to exist, and Limited-3 not yet having been formed.

Regardless, it is not necessary to precisely define the status quo in this case because of our conclusions that the trial court did not clearly abuse its discretion by concluding that Appellants failed to establish a probable right to recover or irreparable injury.

## CONCLUSION

Appellants did not establish either a probable right to recover on their claims for declaratory judgment or irreparable injury if the temporary injunction were denied. The trial court did not commit a clear abuse of discretion, and its order denying Appellants' request for a temporary injunction is affirmed.

Patricia O. Alvarez, Justice