WOODARD, Judge.
In this contract interpretation case, the plaintiffs, Walter J. St. M. LeBreton, Jr. et al., appeal the trial court’s holding that the Allain-LeBreton Partnership Agreement prohibited the exchange of partnership interests.
FACTS
This appeal arises from a dispute over the interpretation of the transfer restriction clause, governed by Article Seven (7) in the Allain-LeBreton Company’s (ALC) written partnership agreement. ALC is a Louisiana partnership formed on December 12, 1977, for a term of seventy-five years. The partnership consists of members of the Allain and the LeBreton families. The LeBreton family comprises the minority faction of the partnership. The primary function of ALC is the ownership and operation of a large tract of land in LaFourche Parish.
Unbeknownst to ALC and the Allain partners, in March of 1991, the LeBreton partners formed a separate partnership named “LeBreton Family Partnership” (LFP). The LeBreton partners transferred their interest in the ALC to the LFP by authentic acts of exchange in return for interests in LFP.
ALC had their regularly scheduled annual meeting on April 27, 1991 with all the Allain and LeBreton partners present in person or by proxy. At this meeting, Mr. Walter J. LeBreton presented a proposed amendment to Article Seven, which would change the transfer restrictions contained therein. The partners tabled a vote on the amendment to allow the partners time to consider it. Following this meeting, the LeBreton partners advised the ALC and the Allain partners that they had exchanged their respective partnership interests in ALC for interests in the newly created LFP. The ALC then made written demand on counsel for the LFP to honor the provisions of Article Seven and either rescind the purported transfers or tender the transferred interest to ALC at book value.
The LeBreton partners and the LFP then filed a petition for declaratory relief, seeking recognition of their right to transfer their interests and a declaration of the validity of such transfers. The suit named the individual Allain partners and the ALC as defendants. The Allain partners filed an exception of no right of action and the court held that neither the LFP nor the individual Al-lain partners were proper plaintiff and defendant, respectively. The ALC filed a recon-ventional demand asking the court to declare that the exchange of individual interests by the LeBreton partners violated the provisions of the ALC. The reconventional demand also claimed the exchanges triggered the clause in the agreement which gave the partnership and the partners right of first refusal to purchase the shares at book value. The LeBreton partners moved for summary judgment. Both sides agreed summary judgment was the proper procedural vehicle to dispose of the litigation.
The trial court held the ALC agreement prohibited the exchange of partnership interests but that the acts of exchange did not trigger the option afforded the partnership to purchase tendered shares at book value. The LeBreton partners appealed the former.
TRANSFER RESTRICTIONS
Article Seven of the partnership agreement addresses transfer restrictions and provides:
*664 Each of the subscribing partners hereto acknowledges to have received a certificate evidencing the number of shares each partner’s ownership interest bears to the total interest in the partnership, which interest is the proportion following each name as here-inabove set forth; these shares shall be heritable and transferable in successions upon presentation of a judgment of possession; should any certificate holder desire to sell his share of the partnership or any portion thereof he shall first offer the same to the partnership through it’s management at it’s book value; the management of the partnership shall have thirty (30) days to accept or reject this offer; should the offer be rejected the partner shall then offer the same to the other partners of the partnership at it’s book value through it’s management and the partners who desire to purchase shall have the right to purchase the same in proportion to their holdings in the said partnership. Should said partners within fifteen (15) days after notice having been given, in writing, fail or refuse to purchase the interest offered for sale, such interest may be sold to anyone provided that the price shall not be less than that at which the interest was offered to the partnership or to the partners as herein provided. Further, all transfers shall be made by authentic act a copy which shall be furnished to management. No transfer of any ownership shall be made or held to be valid or binding unless it be made pursuant to the provisions of this agreement, except that any partner may, at any time, transfer any part or all of his interest in the partnership to a legitimate heir in either his ascending or descending line without having to tender his share to the partnership or the partners.
The crucial provision in Article Seven we must interpret is:
“No transfer of any ownership shall be made or held to be valid or binding unless it be made pursuant to the provisions of this agreement, except that any partner may, at any time, transfer any part or all of his interest in the partnership to a legitimate heir in either his ascending or descending line without having to tender his share to the partnership or the partners.”
Appellants argue this sentence refers to the method of making a transfer and does not say that the transfer must be of “the kind” authorized by the agreement. Appellants further urge that any ambiguity should be resolved by the interpretation which favors freedom to alienate. Phillips v. Newland, 166 So.2d 357 (La.App. 3d Cir.1964), writ denied, 246 La. 872, 167 So.2d 679 (1964).
Restrictions on alienations in partnership agreements have not been the subject of any significant Louisiana court decisions. Thus, appellants argue that such restraints are analogous to corporate stock restrictions on transfers and urge that we should apply the corporate jurisprudence to the instant case. However, we are not convinced this jurisprudence is applicable for the following reasons: In this state, corporations are governed by the Louisiana Business Corporation Law Statute. Specifically, La.Rev.Stat.Ann. Section 12:24(C)(4) provides for the inclusion of transfer restrictions in the articles of incorporation. There is no such statute governing partnerships.
Moreover, there are several critical distinctions between partnerships and corporations. A shareholder neither bears liability for the obligations of the corporation, nor has any individual authority to obligate the corporation. Thus, the law favors free transferability of corporate shares. A restriction on transfer must be in writing and referenced on the face of the stock to be binding. La. R.S. 12:57(F).
On the contrary, every partner in a partnership is liable for the debts of the partnership, absent contrary agreement. La.Civ. Code art. 2803, 2815. Attempts to limit the ability of a partner to bind the partnership are invalid against a good faith party. La. Civ.Code art. 2814. Thus, because any partner may obligate the partnership and therefore, his partners, it would seem appropriate that there would be a presumption against transferability of interests in a partnership. Indeed, La.Civ.Code art. 2807 requires the unanimous consent of all partners for the admission of a new partner, unless otherwise agreed.
However, appellants point out that Civil Code Art. 2807 was not in effect at the *665 time the ALC was formed in 1977. Laws existing at the time a contract is entered into are incorporated into and form part of the contract as though expressly written therein. Board of Commissioners of Orleans Levee District v. Department of Natural Resources, 496 So.2d 281 (La.1986). While La. Civ.Code art. 2807 did not exist at the time the ALC contract was consummated in 1977, the legal principle found in La.Civ.Code art. 2807 is embodied in the jurisprudence prior to the 1980 Code and therefore governed the ALC partnership agreement. Under partnership law applicable in 1974, a partnership was dissolved by any change in relation of the parties, including addition of new partners. Lovell C. Hallelujah, Inc., 451 So.2d 116 (La.App. 3d Cir.1984), writ denied, 458 So.2d 484 (La.1984). Furthermore, in Fearn v. Tiernan, 4 Rob. 867 (1843), the issue before the court was whether a partner, who had been subsequently admitted, was entitled to obligate the partnership and its partners. The court held:
It is too well settled to require any comment, that when a partnership is once formed, no third person can be afterwards admitted or introduced into the firm as a partner, -without the concurrence of all the partners, who compose the original firm.
Thus, the concept that unanimity is required before adding a new partner has been part of partnership jurisprudence for many years prior to its codification under article 2807. This lends support to the presumption against transferability of partnership interests.
Not only is there a presumption against transferability, but the language of the partnership agreement itself prohibits the act of exchange. We quote approvingly from a portion of the reasons for ruling by the trial court concerning the three types of transfers specifically authorized by Article Seven:
One is a transfer to a legitimate heir either in the ascending or descending line. This of course can be done by an exchange. It can be done by an act of sale. It can be done by donation inter vivos or mortis causa, for that matter; and perhaps in other ways. But that is specifically allowed, any type of transfer to an heir, a legitimate heir, in the ascending or descending line.
Another transfer that’s permitted is in the course of successions, presumably intestate successions where ownership would remain in the heirs of the original partners.
And the third is the act of sale. And, of course, that has to be done according to a certain procedure where a right of first refusal is given to the partnership, and in default of the partnership accepting it, to the remaining individual partners. And then if they refuse it, then finally to anyone provided that the price cannot exceed that at which it was offered in the first two instances. And, of course, that’s the only one of the three types of transfers involved that has this book value provision in it.
Now, if that’s the only three types of transfers permitted, why do I conclude that an act of exchange is prohibited? Because — and because of the catch-all at the end of the article which says that, “No transfer of any ownership shall be made or held to be valid or binding unless it be made pursuant to the provisions of this agreement.” Now, admittedly, right before that, there is language that says that all transfers must be made by authentic act. However, it’s obvious that the language right after that is not meant to mean that transfers not done by authentic act are the only transfers being held not to be valid. If for no other reason than immediately after that the word “transfer” is used again in talking about transfers to legitimate heirs.
Obviously, and considering the intent of the original partners, this catch-all transfer prohibition applies to any transfer other than heritable transfers in successions, sales and transfers to legitimate heirs. In that sense the act of exchange is specifically prohibited.
The terms of the partnership contract form the law between the parties. Reina v. Hartenstine, 426 So.2d 654 (La.App. 1st Cir.1982), writ denied, 433 So.2d 153 (La. 1983). Article Seven of the ALC agreement prohibits the LeBretons’ type of exchange. Furthermore, the trial court’s decision is sup *666 ported by the presumption against transferability of partnership interests. Therefore, such an exchange is invalid and this assignment of error lacks merit.
RIGHT OF FIRST REFUSAL
Appellants also contend the right of first refusal provision of Article Seven, which affords the partnership and the other partners the opportunity to purchase the selling partner’s interest at book value, should be stricken as against public policy because it takes the partnership interest out of commerce.
The right of refusal language in Article seven is as follows:
should any certificate holder desire to sell his share of the partnership or any portion thereof he shall first offer the same to the partnership through it’s management at it’s book value; the management of the partnership shall have thirty (30) days to accept or reject this offer; should the offer be rejected the partner shall then offer the same to the other partners of the partnership at it’s book value through it’s management and the partners who desire to purchase shall have the right to purchase the same in proportion to their holdings in the said partnership. Should said partners within fifteen (15) days after notice having been given, in writing, fail or refuse to purchase the interest offered for sale, such interest may be sold to anyone provided that the price shall not be less than that at which the interest was offered to the partnership or to the partners as herein provided.
The right of first refusal applies if a certificate holder wants to sell his share of the partnership. A sale is defined in La.Civ. Code art. 2439 as:
Art. 2439. Sale, definition
The contract of sale is an agreement by which one gives a thing for a price in current money, and the other gives the price in order to have the thing itself.
Three circumstances concur to the perfection of the contract, to wit: the thing sold, the price and the consent.
An exchange is defined in La.Civ.Code art. 2660 as:
Art. 2660. Exchange, definition
Exchange is a contract, by which the parties to the contract give to one another, one thing for another, whatever it be, except money; for, in that case it would be a sale.
The transaction the LeBreton partners attempted was an exchange, not a sale. The right of first refusal does not apply to transfers, thus this assignment of error is irrelevant and we need not address it.
DECREE
For the reasons assigned above, the judgement appealed is affirmed. Costs of this appeal are assessed to appellants, Walter J. St. M. LeBreton, Jr., et al.
AFFIRMED.