EDWARDS, Judge.
This is an appeal by Vizzini Arabian, III, a partnership, and several of its partners from a judgment in reconvention of over $250,000 against them, and in favor of another partner, Katherine G. Ward, for alleged fraud during the confection of the partnership. The judgment also dismissed the original petition of the partnership and partners against Ward for payment of her share of losses. For the following reasons, we set aside the award in favor of Ward, but affirm the dismissal of the Vizzini claims.
The facts are as follows. In 1983, Joseph Vizzini, a CPA, had Katherine Ward as one of his clients. It appears that in that year Mrs. Ward had paid very substantial taxes and Vizzini suggested to her that she consider investing in a tax shelter. At the time Vizzini was putting together a partnership for the purpose of breeding high quality Arabian horses, and he suggested that she become a partner. Ward was the fifth person (of an eventual 23) tentatively agreeing to join the enterprise. She admitted at trial that none of the partners, except Vizzini, had ever spoken to her about investing in the venture, and there was no evidence toLsuggest that any of the other partners had any knowledge of how Ward came to be an investor.
The partnership agreement was signed by all of the partners on September 6, 1984, and Vizzini was made managing partner. The agreement provided that the partners would all share in the profits and losses as per their ownership interest. Ward’s initial capital contribution was $20,-000, representing a 10.03% share. On November 30, 1984, Vizzini signed a note on behalf of Vizzini Arabians for $1,000,000, payable in five years, at Delta Savings and Loan Association for the purchase of brood mares for the breeding program. Over the next four years Ward made her capital calls of some $20,000 per year, but in 1989 she was unable to contribute due to other financial reversals. In 1990, she paid $7,500 of the 1989 call. At this point she had paid in $112,100 in capital contributions. Also by this time the federal tax laws had changed so as to practically do away with the advantages of tax shelters.
During this five year period the market for Arabian horses had declined dramatically and it was evident by 1989 that the venture would be a failure. The Bank demanded payment on the note so most of the mares were sold and the proceeds turned over. Of the remaining balance $866,678, all but three of the partners paid on the note, reducing the amount owing to $191,976, for which another note was given. Sale of the remaining livestock resulted in a further reduction to $176,977, and a later settlement was arranged during the savings and loan crisis whereby the note was canceled for payment by the partners of $105,000.
After adjusting the percentages of ownership interests to reflect the removal of several partners who had gone bankrupt, Ward’s interest in the Lpartnership at the conclusion of its business was 10.56%. Viz-zini et al. claimed in its petition that her share of the loan debt was $83,925, none of which she had paid. It was also urged that there was an outstanding balance on *776 her 1989 capital contribution of.$12,500, making a total claimed of $96,425.
The partners brought suit to recover this sum, as well as for attorney fees involved in litigation with the lending institution over payment of the last $105,000. Ward reconvened alleging that Vizzini had fraudulently induced her into investing in the project by not explaining the risks involved. She further alleged that he had breached his fiduciary duty to her as her CPA in not disclosing that he intended personally to buy a horse farm to board the mares for the partnership and charge it a fee for this service.
After a bench trial the trial judge found that Vizzini had acted fraudulently in getting Ward to invest in the venture and had indeed breached his fiduciary duty to her as her CPA. He awarded her the $112,100 which she had previously paid into the venture, and an additional $153,421 in damages on her reconventional demand, all to be paid by the other partners according to their percentage of ownership interest. He further implicitly found that this fraud vitiated Ward’s consent to the contract of partnership and thus that the original demand urged by the partners could not be sustained. As to Joseph Vizzini, he was not cast in judgment in Ward’s favor because he had been adjudged a bankrupt. The partnership and its partners now appeal.
In his reasons for judgment the trial judge found that a partner is liable for torts committed by another partner, even though the first partner had no knowledge of the tort, when the act is done in the course of the partnership’s 1 ¡¡business.[1] He ruled that Vizzini’s actions in convincing Ward to invest in the partnership were actions done in the course of the partnership’s business and therefore that the other partners were liable to Ward to the extent of their partnership interest. In this court’s opinion this was error.
The record shows that all of the acts of Vizzini which were allegedly fraudulent occurred prior to the formation of the partnership. These acts thus could not possibly have been done in furtherance of the partnership’s business. As to the breach of fiduciary duty, there was no evidence presented at trial to show that the losses suffered by the partnership had anything to do with the fact that Vizzini was boarding the horses at his personally owned farm, or that the charges for this service were anything other than routine in the business. Neither was it shown that Vizzini concealed from the partners his ownership of the farm which he acquired after the partnership agreement was signed by all partners. Thus, even were it considered a breach of fiduciary duty for Vizzini not to disclose to Ward (prior both to her becoming a partner and his actual acquisition of the farm) that he intended to buy the property and charge the partnership for its use, that would not constitute an act in furtherance of the partnership’s business either. In sum, because none of the acts of Vizzini upon which the trial judge relied in imposing liability on the partners were done in the course of the partnership’s business, and because it is not contested that they were ignorant of these acts, we must set aside the judgment against them and in favor of Ward.
The next issue is whether Mrs. Ward is liable for any sums to Vizzini Arabians and/or the partners. We find no error in the determination by the trial court that the partners, Vizzini et ah, did not carry their burden of proof a debt | ¡¡owed to them by a preponderance of the evidence. Because of difficulties in some of the documentation produced by Vizzini in connection with his testimony, we agree that there is insufficient evidence of record to prove any debt of Mrs. Ward.
The one million dollar promissory note of November 30, 1984, was signed by Joseph Vizzini as partner in ‘Vizzini Ara- *777 Mans III.” Although Vizzini testified at trial that all of the partners, including Mrs. Ward, signed a personal guaranty, documentation of such guaranty does not appear in the record; neither is there evidence of her guaranty on the renewed note of $191,976.00. There was also a copy of a Vizzini Arabians check to Southeast Investments signed by Vizzini in the amount of $105,000.00, the final payment on the Vizzini Arabians loan.
Mr. Vizzini produced a sheet which showed the capital contributions made by Mrs. Ward from 1984-1990. He produced another document entitled “Recomputation of Required Partner Capital Contribution To Payoff Delta Using Reduced Balance Based On Payoff to Southeast”, which he used to evidence the portion of the loan payment attributable to Mrs. Ward. It appears from the exhibits that the individual partners, except for Mrs. Ward and another partner who had declared bankruptcy, each paid their approximate adjusted contributions. Mr. Vizzini’s claim that the partnership or the partners paid Mrs. Ward’s adjusted contribution is not evidenced by the documents in the record. The source of any payment made to cover Mrs. Ward’s share was not established at trial and nothing in the record supports the calculations used by Mr. Vizzini. The terms of the partnership contract form the law between the parties.[2] The|7Articles of Partnership provide that a partner who fails to make a capital contribution agrees to hold harmless and indemnify the part-nersMp or partners for damages suffered. Here no particular damages were proven as a result of Mrs. Ward’s failure to pay the remainder of her contribution. No other provisions of the Articles require payment of the remainder of the capital by Mrs: Ward under the circumstances of this case. We note that the partnership has been liquidated for years and is defunct.
For the foregoing reasons we set aside the portion of the judgment granting judgment in favor of Ward. We affirm the portion of the judgment of the trial court dismissing the suit of Vizzini et al. Each party is assessed its own costs of this appeal.
SET ASIDE IN PART; AFFIRMED IN PART.

. Citing Edkins v. Edwards, 235 So.2d 200 (La.App. 4 th Cir.1970).

. Reina v. Hartenstine, 426 So.2d 654 (La.App. 1st Cir.1982), writ denied, 433 So.2d 153 (La.1983); LeBreton v. Allain-LeBreton Co. 93-601 La.App. (3 rd Cir. 2/2/94), 631 So.2d 662.